**WAL–MART STORES, INC., Appellant (Defendant Below),**

v.

**Ruth Ann WRIGHT, Appellee (Plaintiff Below).**

No. 29S05–0202–CV–131.

Supreme Court of Indiana.

Sept. 11, 2002.

**892**

George T. Patton, Jr., Bryan H. Babb, Eric A. Riegner, Indianapolis, IN, Attorneys for Appellant.

Karl L. Mulvaney, Nana Quay–Smith, Candace L. Sage, Bingham McHale LLP; James H. Young, Young & Young, Indianapolis, IN, Attorneys for Appellee.

**ON PETITION FOR TRANSFER**

BOEHM, Justice.

**Factual and Procedural Background**

Ruth Ann Wright sued for injuries she sustained when she slipped on a puddle of water at the "Outdoor Lawn and Garden Corral" of the Carmel Wal–Mart. Wright alleged Wal–Mart was negligent in the maintenance, care and inspection of the premises, and Wal–Mart asserted contributory negligence. By stipulation of the parties, a number of Wal–Mart's employee documents assembled as a "Store Manual" were admitted into evidence at the jury trial that followed. Several of these detailed procedures for dealing with spills and other floor hazards.[1] The applicability of the Manual to the open-air lawn and garden corral was disputed. Both the manager of the corral at the time of Wright's fall and a former assistant manager of the store testified that the Manual applied only inside the store, not in the corral. Another former assistant manager of the store first testified that the Manual did not apply to the corral, but then testified that the sections of the Manual dealing with floor hazards and spills did apply. A former general manager of the Carmel store testified that the Manual did not specifically apply to the corral, but "should be used as a guide to clean up anything that would be considered a hazard." Finally, Janice Walker, a former Carmel Wal–Mart employee who was reporting for work when she witnessed Wright's fall, testified that she would sweep or "squeegee" water in the corral on an "as required" basis, usually after a rainfall or plant watering. Walker also testified that she was a member of the store's safety team and that the puddle where Wright fell was of the type Walker would normally sweep or squeegee.

---

1. Stipulated Exhibit 10, entitled "Stocking General Lesson," instructed employees to "[r]eact quickly to any spills that are on the floor," and to "[n]ever leave a spill unattended." Stipulated Exhibit 11, entitled "Store Housekeeping Floor Care," counseled that "[w]hen a liquid or granular substance is spilled, the area must be cordoned off until the floor is clear and safe for Customer traffic. The spill must be cleaned immediately."

Stipulated Exhibit 12, entitled "Customer Safety Lesson," instructed employees to "[c]orrect hazards immediately," and to use safety cones "to warn Customers and Associates of slippery floors." Stipulated Exhibit 13, entitled "Safety Handbook," reiterated the advice of the previous documents and instructed employees to "[g]uard spills until they are dry."

At the end of the trial, Wright tendered the following instruction:

> There was in effect at the time of the Plaintiff's injury a store manual and safety handbook prepared by the Defendant, Wal–Mart Stores, Inc., and issued to Wal–Mart Store, Inc. employees. You may consider the violation of any rules, policies, practices and procedures contained in these manuals and safety handbook along with all of the other evidence and the Court's instructions in deciding whether Wal–Mart was negligent.
>
> The violation of its rules, policies, practices and procedures are a proper item of evidence tending to show the degree of care recognized by Wal–Mart as ordinary care under the conditions specified in its rules, policies, practices and procedures.

Wal–Mart objected on the ground that "you can set standards for yourself that exceed ordinary care and the fact that you've done that shouldn't be used, as this second paragraph says, as evidence tending to show the degree that you believe is ordinary. The jury decides what ordinary care is." The court overruled the objection and the tendered instruction became Final Instruction 17. The court also instructed the jury that, inter alia, (1) the jury was to consider all the instructions as a whole, and should not "single out any certain sentence or any individual point or instruction and ignore the other" instructions; (2) Wal–Mart was required to maintain its property in a reasonably safe condition suitable for use by its customers; (3) Wal–Mart was negligent if the jury found Wal–Mart had failed to use reasonable care to make its premises reasonably safe for Wright; (4) Wal–Mart was not required to guarantee its customers' safety, but only to exercise reasonable care to prevent harm; (5) negligence is the failure to do what a reasonably careful and prudent person would do under the same or similar circumstances or the doing of something that a reasonably careful and prudent person would not do under the same or similar circumstances; (6) negligence is the failure to exercise reasonable or ordinary care; and (7) reasonable or ordinary care is such care as a reasonably careful and ordinarily prudent person would exercise under the same or similar circumstances.

The jury found Wal–Mart liable and assessed Wright's total damages at $600,000, reduced to $420,000 by 30% comparative fault attributed to Wright. Wal–Mart appealed, contending that the second paragraph of Final Instruction 17 was an improper statement of law that incorrectly altered the standard of care from an objective one to a subjective one. The Court of Appeals affirmed, holding the challenged paragraph of the instruction was proper because it "did not require the jury to find that ordinary care, as recognized by Wal–Mart, was the standard to which Wal–Mart should be held," and because the trial court had not "instructed the jury that reasonable or ordinary care was anything other than that of a reasonably, careful and ordinarily prudent person." *Wal–Mart Stores, Inc. v. Wright*, 754 N.E.2d 1013, 1018 (Ind.Ct.App.2001). This Court granted transfer.

In reviewing a trial court's decision to give or refuse a tendered instruction, this Court considers whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions. *Whitney v. State*, 750 N.E.2d 342, 344 (Ind.2001). The trial court has discretion in instructing the jury, and we will reverse on the last two issues only when the instructions amount to an abuse of discretion. When an instruction is challenged as an incorrect statement of the law, however, appellate review of the rul-

ing is de novo. *Cf. Brown v. State*, 703 N.E.2d 1010, 1019 (Ind.1998). Here, Wal–Mart argues that the second paragraph of Final Instruction 17 incorrectly stated the law because it invited jurors to apply Wal–Mart's subjective view of the standard of care as evidenced by the Manual, rather than an objective standard of ordinary care. Wright responds that the paragraph simply allows jurors to consider Wal–Mart's subjective view of ordinary care as some evidence of what was in fact ordinary care, and does not convert the objective standard to a subjective one. The Court of Appeals agreed with Wright, holding that the paragraph was proper because it "did not require the jury to find that ordinary care, as recognized by Wal–Mart, was the standard to which Wal–Mart should be held," and because the trial court had not "instructed the jury that reasonable or ordinary care was anything other than that of a reasonably, careful and ordinarily prudent person." 754 N.E.2d at 1018.

## I. Work Rules as Standards of Ordinary Care

■ Initially, we note that implicit in each of these positions, and explicit in the second paragraph of the instruction, is the assumption that the Manual in fact "tend[s] to show the degree of care recognized by Wal–Mart as ordinary care under the conditions specified in [the Manual]." Wal–Mart also objected to this assumption, contending "you can set standards for yourself that exceed ordinary care and the fact that you've done that shouldn't be used, as this second paragraph says, as evidence tending to show the degree that you believe is ordinary." We agree. The second paragraph of the instruction told the jurors that because Wal–Mart has established certain rules and policies, those rules and policies are evidence of the degree of care recognized by Wal–Mart as ordinary care. But Wal–Mart is correct that its rules and policies may exceed its view of what is required by ordinary care in a given situation. Rules and policies in the Manual may have been established for any number of reasons having nothing to do with safety and ordinary care, including a desire to appear more clean and neat to attract customers, or a concern that spills may contaminate merchandise.

The law has long recognized that failure to follow a party's precautionary steps or procedures is not necessarily failure to exercise ordinary care. 57A Am.Jur.2d *Negligence* § 187 at 239 (1998) (failure to follow company rule does not constitute negligence per se; jury may consider rule, but rule does not set standard of conduct establishing what law requires of a reasonable person under the circumstances); 1 Dan B. Dobbs, The Law of Torts § 165 (2000) (defendant's rules or practices are evidence bearing on the reasonable care issue, but do not ordinarily count as the standard of care; limiting instruction may be required, advising jury that rules cannot set a higher duty than is required by law); 1 J.D. Lee and Barry A. Lindahl, Modern Tort Law § 3.29 (1996) ("Company rules are generally admissible but not conclusive on the question of the standard of care."); *Rupert v. Clayton Brokerage Co.*, 737 P.2d 1106, 1111 (Colo.1987) (internal rules of brokerage firm relevant to standard of care for breach of fiduciary duty, but not determinative of the standard of care); *Sherman v. Robinson*, 80 N.Y.2d 483, 591 N.Y.S.2d 974, 606 N.E.2d 1365, 1369 n. 3 (1992) (defendant's company manual did not create a separate duty of care; where internal rules require a standard that transcends reasonable care, breach of rules cannot be considered evidence of negligence); *cf. Boutilier v. Chrysler Ins. Co.*, No. 8:99–cv–2270–T–26MAP, 2001 WL 220159, at * 1, 2001 U.S. Dist. LEXIS 5526, at * 4 (M.D.Fla. Jan. 31, 2001) (in negligence action, mere fact that defendant has internal corporate poli-

cy does not create a legal duty or cause a breach of that duty). We think this rule is salutary because it encourages following the best practices without necessarily establishing them as a legal norm.

## II. Ordinary Care as an Objective Standard

■ There is a second problem with the instruction. Even if the Manual reflected Wal–Mart's subjective view of ordinary care, the second paragraph of the instruction incorrectly states the law because it invites jurors to apply Wal–Mart's subjective view—as evidenced by the Manual—rather than an objective standard of ordinary care. It is axiomatic that in a negligence action "[t]he standard of conduct which the community demands must be an external and objective one, rather than the individual judgment, good or bad, of the particular actor." W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 32, at 173–74 & n. 3 (5th ed.1984) (citing *The Germanic,* 196 U.S. 589, 25 S.Ct. 317, 49 L.Ed. 610 (1905)); *see also id.* § 32, at 174 n. 2 (" 'The standard of care exacted by the law is an external and objective one and the law does not permit the defendant to make the determination ....' ") (quoting *Fancher v. Southwest Mo. Truck Ctr., Inc.,* 618 S.W.2d 271, 274 (Mo.Ct.App. 1981)); *cf. Ware v. State,* 441 N.E.2d 20, 21 n. 1 (Ind.Ct.App.1982), *reh'g denied* ("An objective standard of conduct is external, formulated with reference to community values. A subjective standard, by contrast, refers to the judgment or perceptions of the particular actor.") (citing W. Prosser, *Handbook of the Law of Torts* 150 (4th ed.1971)). An individual "actor's belief that he is using reasonable care is immaterial." Keeton, *supra,* § 32, at 174 n. 3. This door swings both ways. A defendant's belief that it is acting reasonably is no defense if its conduct falls below reasonable care. Similarly, a defendant's belief that it should perform at a higher standard than objective reasonable care is

equally irrelevant. As one court succinctly put it, "a party's own rules of conduct are relevant and can be received into evidence with an express caution that they are merely evidentiary and not to serve as a legal standard." *Mayo v. Publix Super Mkts., Inc.,* 686 So.2d 801, 802 (Fla.Dist. Ct.App.1997).

Wright cites four cases in support of the instruction: *Smith v. Cleveland C.C. & St.L. Ry. Co.,* 67 Ind.App. 397, 117 N.E. 534 (1917); *N.Y. Cent. Ry. Co. v. Wyatt,* 135 Ind.App. 205, 184 N.E.2d 657 (1962); *Cent. Ind. Ry. Co. v. Anderson Banking Co.,* 143 Ind.App. 396, 240 N.E.2d 840 (1968); and *Frankfort v. Owens,* 171 Ind. App. 566, 358 N.E.2d 184 (1976). These authorities support the admissibility of the Manual, which Wal–Mart does not contest. They do not support an instruction to consider any "violation" of the Manual as "evidence tending to show the degree of care recognized by Wal–Mart as ordinary care under the conditions." We conclude that the second paragraph of Final Instruction 17 was an improper invitation to deviate from the accepted objective standard of ordinary care and therefore incorrectly stated the law.

## III. Harmless Error

■ When a jury instruction incorrectly states the law, we assume that the erroneous instruction influenced the verdict and will reverse unless the verdict would have been the same under a proper instruction. *Vergara by Vergara v. Doan,* 593 N.E.2d 185, 187 (Ind.1992); *Canfield v. Sandock,* 563 N.E.2d 1279, 1282 (Ind. 1990). This instruction suffered from two flaws. It equated Wal–Mart's procedures with reasonable care and it asserted that Wal–Mart's subjective view of reasonable care was relevant. No other instruction corrected these problems. Accordingly, read together these instructions introduced the concept of reasonable or ordi-

nary care, directed the jurors to consider the Manual as evidence tending to show what Wal–Mart "recognized" that ordinary care to be, and thereby implied that a violation of the Manual was a violation of ordinary care.

Had the Manual played a smaller role in the trial, perhaps this error could be deemed harmless. However, the applicability of the Manual to the lawn and garden corral and the effect of a violation of the Manual were hotly contested and formed a substantial part of Wright's case. During voir dire Wright foreshadowed the introduction of the Manual in the following exchange with a potential juror about her own work rules:

Q. What if you didn't, how would you feel about it if you didn't follow those procedures that are in your handbooks and in your manuals?

A. How would I feel?

Q. As far as whether you did what was reasonable?

A. If I didn't follow what I was supposed to follow, then how would I feel about it?

Q. Would you feel like you hadn't done what you were supposed to do?

A. Of course. Of course, yes.

Q. And kind of fell below a standard of what the company felt was reasonable under the circumstances.

A. Right.

In her opening statement, Wright again relied on the Manual:

And that's what I'm talking about here, it's not absolutely guaranteed safe. We don't hold them to that standard. We know there's no guarantees in life. But the evidence is that they failed to use reasonable care. Evidence of what is reasonable care in their own safety manual which you'll see throughout this trial

. . . .

In closing argument Wright contended that Wal–Mart "[d]idn't follow its own

rules by squeegeeing and brooming, didn't follow its own rules by using safety cones or cordoning off the area, did not follow it's own procedures by leaving the hazard unattended," and again read the relevant portions of the Manual to the jury. Wright also stated that "[t]he Judge is going to instruct you about these manuals and rules and safety rules and how they can be of guidance to you. I think they're guidance because they show what is reasonable under the circumstances." Final Instruction 17 was then read to the jury verbatim. On these facts the Manual took on heightened evidentiary significance, and the potential impact of the flawed paragraph is apparent.

### Conclusion

The judgment of the trial court is reversed. This action is remanded for a new trial.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.