**PHOENIX NATURAL RESOURCES, INC., Appellant–Defendant,**

v.

Orville **MESSMER,** Patrick L. **Messmer,** Timothy J. **Messmer,** Douglas J. **Messmer, J.B.M. Lammers, Inc., Harold Neuhoff, Jr., Berg Farms, Inc., Ronald Stenftenagel, M & M Schwenk Farm, Recker Farms, Inc., Voelkel Farms, Inc., and G & K Hasenour Farms, LLC, Appellees–Plaintiffs.**

No. 19A05–0305–CV–213.

Court of Appeals of Indiana.

March 12, 2004.

Rehearing Denied May 13, 2004.

Eric D. Johnson, Kightlinger & Gray, LLP, Indianapolis, IN, Attorney for Appellant.

Steven G. Cracraft, Karl L. Mulvaney, Christopher M. York, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Phoenix Natural Resources, Inc., ("Phoenix") appeals the trial court's judgment in favor of Appellees–Plaintiffs, Orville Messmer ("Orville"), Patrick L. Messmer, Timothy J. Messmer, Douglas J. Messmer, J.B.M. Lammers, Inc., Harold Neuhoff, Jr., Berg Farms, Inc., Ronald Stenftenagel, M & M Schwenk Farm, Recker Farms, Inc., Voelkel Farms, Inc., and G & K Hasenour Farms, Inc. (collectively, "Farmers"). We affirm.

### Issue

Phoenix raises one issue, which we restate as whether the trial court abused its discretion by instructing the jury that if Phoenix violated Indiana Code Section 14–28–1–20, Phoenix is negligent and, thereby, liable to Farmers for damages incurred as a result of the violation, without further instructing the jury that such negligence may be excused if Phoenix had a reason or justification for the violation.

## Facts and Procedural History

### I. Background

This lawsuit arises from flooding that occurred in the Patoka River, which damaged Farmers' crops. The Farmers, i.e., nine separate farming families or operations located in Dubois County, Indiana, cultivated fields in the floodplain of the Patoka River. Phoenix is a coal mining company that has conducted mining operations at its Mining Complex in Dubois County since January of 1992. The Mining Complex was originally owned by PV Mining Company ("PV Mining"). PV Mining sold the Mining Complex to Nerco, who in turn sold it to Phoenix in 1992. Phoenix and its predecessors conducted mining operations pursuant to Permit Number P–00009 ("Mining Permit"), which was granted by the Natural Resource Commission ("NRC") on November 30, 1983 and renewed every five years thereafter. The Mining Permit also provides that: "Drainage structures will be inspected daily and any blockages will be removed." [1] Appellees' App. at 31.

### II. The Kessner Bridge

Prior to receiving the Mining Permit, on May 25, 1982, PV Mining applied to the NRC for the construction of a temporary private road bridge over the Patoka River, approximately two miles north of Dubois County ("Application"). The Engineer's Report accompanying the Application provided the following provision:

> Conclusions and Comments: A discharge of 17,000 cfs passing through the waterway area of 14,320 square feet results in an average velocity of 1.1 feet per second, which is a reasonable velocity for this stream. The proposed structure will be 7.5 feet below the 100–year frequency flood. The structure will have affect on the 100–year frequency flood with only minor affects on lesser floods or in-channel flow. *Culverts have a tendency to collect debris. [PV Mining] has indicated that [it has] the equipment and manpower to clean debris when it does collect. The project is also subject to approval under Section 15 of the Flood Control Act[2] which involves work on the flood control projects.*

*Id.* at 23–24 (emphasis added). On May 26, 1982, The NRC granted PV Mining's Application for a construction permit ("Construction Permit") subject to the following conditions:

> B.... Nondocumentary and oversized exhibits shall not be sent to the Court, but shall remain in the custody of the trial court or Administrative Agency during the appeal. Such exhibits shall be briefly identified in the Transcript where they were admitted into evidence. Photographs of any exhibit may be included in the volume of documentary exhibits.

The record before us does not contain a separately-bound volume of exhibits as required by Rules 11 and 29. Fortunately, however, the Farmers have included copies of certain exhibits in their Appellees Appendix. It is from these copies that we discern the information contained in the various Permits.

1. Indiana Appellate Rule 11 requires the court reporter to "prepare, certify and file the Transcript," including the separately-bound volumes of exhibits as required by Rule 29. Indiana Appellate Rule 29, which governs exhibits, provides that:

> A.... Documentary exhibits, including testimony in written form filed in Administrative Agency proceedings and photographs, shall be included in separately-bound volumes that conform to the requirements of Rule 28(A)(6). The court reporter shall also prepare an index of the exhibits contained in the separately-bound volumes, and that index will be placed at the front of the first volume of exhibits.

2. *See* Ind.Code §§ 14–28–1–1, –36.

(1) no felled trees, brush or other debris be left in the floodway of the stream,

(2) all disturbed areas be effectively protected from erosion during the construction period, and be suitably revegetated with grasses and legumes or otherwise provided with permanent protection upon completion,

(3) the project be approved by the Patoka River Conservancy District,

(4) the project be approved by the U.S. Corps of Engineers, Louisville District,

(5) the permit be a five-year permit which will expire July 1, 1987, at which time the bridge will be approved by the [NRC] or will be removed at the owner's expense.[3]

*Id.* at 21–22. The Construction Permit further provides, in part, that:

The approval by the Commission does not relieve the person making application ... of liability for the effects of [its] project upon the safety of life and property of others.

*Id.* at 21.

On July 21, 1982, the Army Corps of Engineers approved PV Mining's construction project and issued a Department of the Army Permit ("Army Permit"), "authorizing the placement of fill material in the Patoka River in association with the construction of a new bridge." *Id.* at 33. The Army Permit provides, in relevant part, as follows:

i. That this permit does not convey any property rights, either of real estate

3. There is no evidence in the record that the NRC approved a new permit for the Kessner Bridge after July 1, 1987. However, the parties do not dispute that the Kessner Bridge remains in place as of the date of this appeal.

4. Indiana Code Section 14–8–2–102 defines "floodway" as:

or material, or any exclusive privileges; and that it does not authorize any injury to property or invasion of rights or any infringement of Federal, State, or local laws or regulations nor does it obviate the requirement to obtain State or local assent required by law for the activity authorized herein.

\* \* \* \* \*

II. *Special Conditions:* ...

\* \* \* \*: \*

c. That the permittee shall maintain an active maintenance program to remove debris entrapped at the upstream side of the arch culverts so that stream flow will not be impeded.

*Id.* at 36–37.

Subsequently and pursuant to the Mining, Construction, and Army permits, PV Mining constructed the Kessner Bridge, along with an approach road, across approximately 2,000 feet of floodplain east of the Patoka River. Both the Kessner Bridge and the approach road are located in the Patoka River floodway.[4] After the Kessner Bridge was constructed, PV Mining and its successors, at various times, removed the debris that collected behind the culverts. The specific efforts taken by Phoenix to remove such debris are not pertinent to our resolution of the present appeal.

III. *The Flooding of 1998–1999*

The flooding at issue in this case resulted from heavy rainfall over the span of

(1) the channel of a river or stream; and

(2) the parts of the flood plain adjoining the channel that are reasonably required to efficiently carry and discharge the flood water or flood flow of a river or stream.

multiple days. Between July 4, 1998 and July 8, 1998, approximately 5.4 inches of rain were recorded by the rain gauge in Jasper, Indiana. A rain gauge located approximately three-fourths of a mile away from the Kessner Bridge recorded 6.8 inches of rain during the same period in 1998. Between June 24, 1999 and July 2, 1999, approximately 7.3 inches of rain were recorded by the Jasper rain gauge. During that same period of time, approximately 7.15 inches of rain were recorded near the Kessner Bridge.

During the 1998 flood event, Orville noticed that "the Patoka [River] was full." Tr. at 18. He also noticed that the culverts of the Kessner Bridge were filled with debris such that water could not pass through them. The water backed up and flooded the Farmers' fields, destroying their crops.

### IV. Commencement of the Present Litigation

On March 29, 2000, Farmers filed a complaint against Phoenix, alleging that Phoenix negligently permitted debris to accumulate in the culverts of the Kessner Bridge, which resulted in flooding of the Farmers' fields. At a jury trial, the trial court gave Final Instruction Number Three ("Instruction Three"), over Phoenix's objection. Instruction Three provides as follows:

At the time of the occurrence being considered in this case, Indiana Code Section 14–28–1–20 provided, in relevant part, as follows:

A person may not do any of the following:

(1) ... use or maintain in or on any floodway, or suffer or permit the ... use or maintenance in or on any floodway, a structure, an obstruction or a deposit ... that will do the following:

(A) Adversely affect the efficiency of or unduly restrict the capacity of the floodway.

(B) By virtue of the ... state of maintenance or physical condition do any of the following:

(i) Constitute an unreasonable hazard to ... property.

If you find from a preponderance of the evidence that [Phoenix] violated this statute on the occasion in question, such conduct would constitute negligence to be assessed against [Phoenix.]

Appellees' App. at 3; Tr. at 864. Phoenix objected to Instruction Three, in part, because it does not permit the jury to release Phoenix from liability if Phoenix had an excuse or justification for violating the statute. At the conclusion of trial, the jury returned verdicts in favor of Farmers, in the aggregate amount of $1,182,644.88. The trial court entered judgment on the jury's verdicts and this appeal by Phoenix ensued.

### Discussion and Decision

#### I. Standard of Review

 Phoenix's sole claim of error on appeal is that the trial court abused its discretion by giving Instruction Three to the jury. In reviewing a trial court's decision to give or refuse a tendered instruction, we consider whether the instruction: (1) correctly states the law; (2) is supported by the evidence in the record; and (3) is covered in substance by other instructions. *Wal–Mart Stores, Inc. v. Wright,* 774 N.E.2d 891, 893 (Ind.2002). The trial court has discretion in instructing the jury and, thus, we will reverse on the last two issues only when the instructions constitute an abuse of discretion. *Id.* When an instruction is challenged as an incorrect statement of the law, however, appellate review of the ruling is de novo. *Id.*

## II. Analysis

■ Here, Phoenix argues that the trial court abused its discretion by giving Instruction Three because the Instruction failed to inform the jury that it could release Phoenix from liability if Phoenix had an excuse or justification for violating the statute at issue, i.e., Indiana Code Section 14–28–1–20. Indiana Code Section 14–28–1–20 provides, in relevant part,

A person *may not do any of the following:*

\* \* \* \* \*

(2) Except as authorized under section 26.5 of this chapter,[5] erect, make, use, or maintain in or on any floodway, or suffer or permit the erection, making, use, or maintenance in or on any floodway, a structure, an obstruction, a deposit, or an excavation that will do any of the following:

(A) Adversely affect the efficiency of or unduly restrict the capacity of the floodway.

(B) By virtue of the nature, design, method of construction, state of maintenance, or physical condition do any of the following:

(i) Constitute an unreasonable hazard to the safety of life or property. . . .

(Emphasis added). This statute, which is part of the Flood Control Act, was enacted to prevent the maintenance of a structure or an obstruction that would restrict the capacity of the floodway or constitute an unreasonable hazard to the lives or property of others, including Farmers.

Phoenix concedes that a violation of Indiana Code Section 14–28–1–20 constitutes negligence per se. However, on appeal, Phoenix challenges Instruction Three because it did not permit the jury to consider evidence that Phoenix had an excuse or justification for violating Indiana Code Section 14–28–1–20. Instruction Three appears to have been modeled after Indiana Pattern Jury Instruction Number 17.01, which provides as follows:

At the time of the occurrence being considered in this case, [Indiana statute] [an ordinance of _____] provides as follows:

\* \* \* \* \*

If you find from a preponderance of the evidence that any party violated this [statute] [ordinance] on the occasion in question and the violation was without excuse or justification, such conduct would constitute [fault] [negligence] to be assessed against that party.

INDIANA PATTERN JURY INSTRUCTIONS (CIVIL) § 17.01 (2d ed.2003). The Comments to this instruction provide, in relevant part:

In the case where there is no evidence of excuse or justification for violation of a statute, or there can be no permissible inference of any facts that would excuse or justify violation of statute, this instruction should be modified by omitting the clause relating to excuse or justification.

*See id.; see also Larkins v. Kohlmeyer,* 229 Ind. 391, 98 N.E.2d 896, 900 (1951) ("It is not error to instruct the jury that the violation of a statute is negligence per se, or negligence as a matter of law, when there is no evidence or permissible inference of any fact or facts which would tend to excuse such conduct.").

■ In *Larkins,* our supreme court recognized that there might be facts and circumstances that will excuse a technical

---

**5.** Indiana Code Section 14–28–1–26.5 concerns the erection or placement of a residence or mobile home in a floodway and is, thus, not applicable to the present dispute.

violation of an ordinance or statute and render it improper for the court to declare as a matter of law that such violation constitutes actionable negligence. *Id.* at 899 (citing *Conder v. Griffith,* 61 Ind.App. 218, 111 N.E. 816, 819 (1916)). However, "facts which will excuse such technical violation must result from causes or things beyond the control of the person charged with the violation." *Larkins,* 98 N.E.2d at 899. Additionally, the court examined the nature of an excuse or justification, in the context of a motor vehicle statute violation, as follows:

> A legal excuse, precluding liability for injuries resulting from the failure to comply with the statutory requirements respecting the operation of a motor vehicle on the public highways, must be something that would make it impossible to comply with the statute, something over which the driver has no control, an emergency not of the driver's making causing failure to obey the statute, or an excuse or exception specifically provided in the statute itself.

*Id.* at 900 (quoting *Bush v. Harvey Transfer Co.,* 146 Ohio St. 657, 67 N.E.2d 851, 855 (1946)).

In the present case, Phoenix has failed to present any evidence that rises to the level of a legal justification or excuse for its violation of Indiana Code Section 14–28–1–20. Rather, Phoenix merely asserts that it would have been "very dangerous" to attempt to remove the debris during the floods of 1998 and 1999. Appellant's Br. at 11. To support this assertion, Phoenix relies upon testimony that it "could be very dangerous" to clean out the culverts during a flood period. Tr. at 843. However, this testimony, and any permissible inference drawn therefrom, does not support the giving of an excuse or justification instruction regarding the violation of the statute at issue. Rather, even assuming that it would have been very dangerous for

Phoenix's employees to clean out the culverts during the floods of 1998 and 1999, this fact alone will not excuse a violation of Indiana Code Section 14–28–1–20 because such dangerous condition is one of Phoenix's own making, and thus not beyond its control.

Moreover, the Kessner Bridge is more basic to our analysis than the accumulated debris underneath it. Here, the evidence reveals that Phoenix, via its predecessor PV Mining, applied for and received permission to build a temporary bridge and approach road in a floodplain over the Patoka River. Obtaining the Construction permit did not elevate or change the character of the improvements to something other than an obstruction in the Patoka River floodway. Therefore, Phoenix remains liable under Indiana Code Section 14–28–1–20 for any obstruction, whether it is the Kessner Bridge, approach road, or debris accumulated thereunder. The Construction Permit, by its express terms, does not immunize Phoenix from liability "for the effects of [the] project upon the safety of life and property of others." Appellees' App. at 21. The fact that Phoenix did not foresee that a flood, caused by rainfall, might arise in a flood plain allowing for the culverts underneath the Kessner Bridge to collect debris, likewise, does not relieve it of liability, nor does it provide Phoenix with an excuse or justification for violating Indiana Code Section 14–28–1–20. As such, the trial court properly omitted the clause relating to excuse or justification in Instruction Three.

For the foregoing reasons, we affirm the trial court's judgment in favor of Farmers.

Affirmed.

RILEY, J., and DARDEN, J., concur.