

FILED

Dec 30 2016, 8:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Michael C. Harris
Connor H. Nolan
Harris Welsh & Lukmann
Chesterton, Indiana

ATTORNEYS FOR APPELLEE

Nicholas T. Otis
Martin W. Kus
Newby Lewis Kaminski & Jones, LLP
La Porte, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Richard Brown and Janet
Brown,

*Appellants-Plaintiffs,*

v.

City of Valparaiso, Indiana,

*Appellee-Defendant.*

December 30, 2016

Court of Appeals Case No.
64A05-1607-PL-1488

Appeal from the Porter Superior
Court

The Honorable Roger V. Bradford,
Judge

Trial Court Cause No.
64D01-0911-PL-11902

**Najam, Judge.**

## Statement of the Case

[1]   Richard Brown and Janet Brown appeal from the trial court's entry of partial summary judgment in favor of the City of Valparaiso, Indiana ("the City"), on the Browns' complaint in which they alleged, in relevant part, that the City was negligent in causing flooding to their residence in 2008. The Browns present

several issues for our review, but we need only address the following two dispositive issues:

1. Whether the Browns are entitled to assert a private cause of action alleging negligence *per se* under Indiana's Flood Control Act.

2. Whether they are entitled to assert a private cause of action for a public nuisance.

We affirm.

## Facts and Procedural History

This court has stated the facts underlying the Browns' claims as follows:

> Sometime around 1973, Clarence Brown, Richard Brown's grandfather, parceled out of his farmland what is now the Browns' property, with Clarence retaining ownership of nearly 120 adjoining acres of farmland. The Browns live on the east side of Silhavy Road in Valparaiso, Indiana, and their property borders what is known as the Hotter Detention Facility, a water retention/detention facility run by the City. The Browns built an approximately 2000-square-foot, brick, ranch-style home with a 900-square-foot attached garage in the 1970s. In the late 1970s or early 1980s, the Browns finished the lower level of their home, completing an additional 2000 square feet of living area, with the lower level walking out onto a 20' by 40' concrete patio. Except for certain parts, the farmland would eventually become the site of the Hotter Detention Facility, which lies immediately to the east of the Browns' property.
>
> Also in the 1970s, the City developed a project in conjunction with a county drain. Storm drainage from one ditch, a city drain, would be connected with another ditch, which connected with

and drained into the Kankakee River. A part of the plan was to improve an approximately ten-mile stretch of ditches[] by widening, improving, and developing them through the course of the project.

Nearly contemporaneously with the drainage project, the City began developing a traffic-control project at the five-point intersection of Calumet Avenue, Roosevelt Avenue, and Vale Park Road. During the course of the project, storm water problems developed and the City received money from the federal government. As a result of the storm water concerns, the City acquired the Hotter Lagoon property and developed it by installing a levee to retain the storm water. The City received approval from the Indiana Department of Natural Resources on March 24, 1977. Under the plan, water would be brought into the Hotter Lagoon at an elevation of 790.8 feet above sea level and would flow in a southeasterly direction into a ditch with a control structure of three, 24-inch corrugated metal pipes with an invert of 788.4 feet and a crest of 791 feet above sea level. The project was completed in the 1970s.

In the early 1980s, the City experienced three major storms within a period of years. The City commissioned an engineering study to plan and develop a city-wide storm water plan because of the flooding and storm water problems experienced by the City. The City hired Donahue and Associates, design engineers and consultants, to assist the City Engineer, John Hardwick, in the design of the water-detention facility. Donahue was to study the storm water problems and to design and develop a larger storm water facility at the location of the current Hotter Detention Facility[] and to provide advice to the City by identifying problem areas, providing solutions to the problems, and providing cost estimates of the proposed improvements. In adopting the completed plan recommended by Donahue, the City, by its engineering and mayor's offices, weighed competing priorities and budgetary considerations. The Hotter Lagoon was expanded for the construction of the Hotter Detention Facility.

The Hotter Detention Facility was designed and developed to withstand a one-hundred-year storm[] based on the City's previous experience with severe storms and the balancing of costs to develop and maintain a facility capable of handling larger storms. At the time the Hotter Detention Facility was being developed, what is now known as the Indiana Department of Transportation was planning and engineering the Indiana State Highway 49 Bypass. The Department of Transportation was in need of dirt and soil to build bridge embankments on Highway 49 and the City needed to remove dirt and soil in the development of the Hotter Lagoon project.

The City and the Department of Transportation entered into an agreement under which the City would prepare plans and preliminary special provisions for a storm detention pond, outlet structures, and emergency spillway. The City was to acquire all rights-of-way needed for construction of the Hotter Detention Facility. The cost to prepare the plans and acquire the rights-of-way was the City's obligation. The cost of the construction was to be the State's obligation with the City's consent. As consideration for construction of the Hotter Detention Facility, the State and its contractors were allowed to remove, at no charge, any and all material excavated during the construction to use on the Highway 49 Bypass Project. The City was to provide all maintenance to the Hotter Detention Facility after its construction.

Hardwick had information in his office indicating that a topographical survey prepared on May 27, 1977, showed the 100 Year Flood Stage at an elevation of 792.12 feet above sea level. The engineering drawing additionally showed the elevation at the border shared by the Browns' and the City's Property was at an elevation of 792.5 feet above sea level, and that portions of the Browns' backyard were at an elevation of 792.8 feet above sea level. The Browns' property, although higher than the 100 Year Flood standard, was more than three feet lower than the wall of

the Hotter Detention Facility and more than two feet lower than the Hotter Detention Facility's spillway.

Over the weekend beginning September 13, 2008, Valparaiso, Indiana[,] experienced significant rain storms, which led to flooding of some property, and which qualified the City of Valparaiso for federal disaster relief as a result of the storms and flooding. Tim Burkman, the City's engineering director, testified that the second of those storms, which occurred on September 11, 2008[,] through September 15, 2008, was in excess of the City's storm water capacity. Other detention facilities in Valparaiso exceeded their capacity and spilled over into streets and property. The storm produced 9.8 to 11 inches of rain. According to Burkman, the U.S. Geological Survey reported that the storm was in excess of a 200-year storm based on 9.8 inches of rain. Some areas near the Hotter Detention Facility showed rain in excess of ten inches, which would be considered a 500-year storm event. David McCormick, an expert testifying on behalf of the Browns, acknowledged that[,] based upon the amount of rain that fell, the storm was considered to be between a 200-year and 500-year storm. Burkman testified that the Hotter Detention Facility was designed for a 100-year storm and performed as it should[] but could not handle the water exceeding its capacity.

Water entered the northeast portion of the Browns' property where it adjoined the Hotter Detention Facility. Sandbagging efforts by the Browns proved unsuccessful and approximately eighteen or more inches of water entered the lower level of their home, damaging the carpeting, drywall, furniture, electrical outlets, appliances, and the furnace. The Browns' property was the only privately-owned property that received water from the Hotter Detention Facility, as there were no reports of flooding of any properties on the perimeter of or adjoining the Hotter Detention Facility save for the Browns' property.

> After unsuccessfully attempting to obtain relief from the City, the Browns complied with all tort-claim notice requirements and ultimately filed their complaint against the City to recover for their losses.

*Brown v. City of Valparaiso*, No. 64A03-1308-PL-332, 2014 WL 1400198, at *1-3 (Ind. Ct. App. April 10, 2014) ("*Brown II*").[1]  In their complaint, the Browns asserted three counts:  inverse condemnation; a civil action under 42 U.S.C. § 1983; and a tort claim based on negligence.  The Browns later withdrew the § 1983 claim.  The trial court bifurcated the two remaining claims and, following a bench trial on the Browns' inverse condemnation claim in December 2012, the trial court found in favor of the City.  We affirmed the trial court on appeal.  *Id.* at *8.  Thereafter, prior to trial on the tort claim, the Browns "amended the pre-trial order to include claims for public nuisance in addition to [the] negligence claims set for trial."  Appellants' Br. at 9.  Accordingly, the trial court postponed trial to allow further discovery.

[4]  On November 25, 2015, the City filed its motion for partial summary judgment alleging that it was entitled to judgment on the Browns' public nuisance claim.  The Browns filed a response and their own motion for partial summary

---

[1]  The instant appeal is the fourth appeal in this matter.  In the first appeal, we affirmed the trial court's denial of the City's motion for partial summary judgment on the Browns' negligence claim and the trial court's denial of the City's motion to strike certain evidence. *Brown v. City of Valparaiso*, No. 64A03-1307-PL-239, 2014 WL 992090 (Ind. Ct. App. March 13, 2014) ("*Brown I*").  In *Brown II*, we affirmed the trial court's judgment in favor of the City on the Browns' inverse condemnation claim.  In the third appeal, we reversed the trial court's grant of the City's motion to dismiss the Browns' complaint alleging inverse condemnation under Trial Rule 12(B)(8). *Brown v. City of Valparaiso*, No. 2016 WL 6396105, 2016 WL 6396105 (Ind. Ct. App. Oct. 26, 2016) ("*Brown III*").

judgment on the public nuisance claim and their negligence *per se* claim under the Flood Control Act. Following a hearing, the trial court entered judgment for the City on both the Browns' public nuisance claim and their negligence *per se* claim. Appellants' App. Vol. II at 17. The trial court found that there was "no just cause for delay" and ordered "all of the above judgments entered as final judgments." *Id.* The Browns filed a motion to correct error, which the trial court denied following a hearing. This appeal ensued.[2]

## Discussion and Decision

### *Standard of Review*

[5] Our supreme court has set out the applicable standard of review on summary judgment as follows:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

---

[2] The Browns do not argue that the trial court erred when it denied their motion to correct error, and our standard of review for appeal from the denial of a motion to correct error directs us to consider the underlying order. *See Lighty v. Lighty*, 879 N.E.2d 637, 640 (Ind. Ct. App. 2008).

The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

### Issue One: Negligence Per Se

[6] The Browns first contend that they have a private cause of action under the Flood Control Act ("the Act") and, thus, are entitled to pursue their claim that the City was negligent *per se* when it violated the Act. Accordingly, they assert that the trial court erred when it entered summary judgment in favor of the City on this issue and denied their motion for summary judgment. We cannot agree.

[7] Generally speaking, negligence *per se* is the unexcused or unjustified violation of a duty prescribed by statute. *See City of Fort Wayne v. Parrish*, 32 N.E.3d 275, 277 (Ind. Ct. App. 2015), *trans. denied.* Here, the Browns allege that, when it constructed the Hotter Detention Facility in the late 1980s, the City violated

Indiana Code Section 13-2-22-13 (1987),[3] which provided in relevant part as follows:

> (b) It is unlawful to erect, make, use, or maintain any structure, obstruction, deposit, or excavation in or on any floodway or to suffer or permit any structure, obstruction, deposit, or excavation to be erected, made, used, or maintained in or on any floodway which will adversely affect the efficiency of or unduly restrict the capacity of the floodway or which, by virtue of its nature, design, method of construction, state of maintenance, or physical condition, will constitute an unreasonable hazard to the safety of life or property, or result in unreasonably detrimental effects upon the fish, wildlife, or botanical resources, and the same are declared to be and to constitute public nuisances.
>
> (c) The commission may commence, maintain, and prosecute any appropriate action to enjoin or abate a nuisance, including any of the nuisances described in subsection (a) and any other nuisance which adversely affects flood control or the safety of life or property, or is unreasonably detrimental to fish, wildlife, or botanical resources.

[8] In addition, Indiana Code Section 13-2-22-20 provided:

> (a) A person who violates section 13 . . . of this chapter commits a class B infraction, and each day of continuing violation after conviction of the offense constitutes a separate offense.

---

[3] The parties do not provide an exact date for the construction of the facility and cite to both the 1981 and 1987 versions of the applicable statutes in support of their arguments on appeal. Because the differences between the two versions are not substantive, for ease of discussion we cite the 1987 version.

(b) The commission may maintain an action to enjoin any violation of this chapter.

[9]     In support of its motion for partial summary judgment,[4] the City argued that, because the Act "only provided one remedy, an infraction, and one enforcement mechanism, the commission, there can be no private cause of action for . . . violation of [Indiana Code Section] 13-2-22-3." Appellants' App. Vol. II at 14. In support of that contention, the City relies on this court's opinion in *Estate of Collup v. State*, 821 N.E.2d 403 (Ind. Ct. App. 2005), where we were asked to determine whether a plaintiff was entitled to bring a private cause of action under Indiana Code Section 9-21-19-6, which creates a duty for owners and occupants of real property to maintain and keep in repair the approaches to their land. We held as follows:

> When a civil cause of action is premised upon violation of a duty imposed by statute, the initial question to be determined by the court is whether the statute in question confers a private right of action. *Roberts v. Sankey*, 813 N.E.2d 1195, 1198 (Ind. Ct. App. 2004), *trans.*[*denied*]. The determination of whether a civil cause of action exists begins with an examination of legislative intent. *Id.* This primarily includes discerning whether the statute is designed to protect the general public and whether the statutory scheme contains an enforcement mechanism or remedies for violation of the duty. *See id.* "As a general rule, a private party may not enforce rights under a statute designed to protect the

---

[4] In its partial summary judgment motion and in its brief on appeal, the City conflates the two issues of negligence *per se* under the Act and the Browns' public nuisance claim. Because these issues are distinct, we address them separately. We agree with the City's argument on the issue of whether the Browns can bring a private cause of action under the Act, but the City is incorrect when it contends that the same argument applies to the question of the public nuisance claim, which we address in Issue Two.

public in general and containing a comprehensive enforcement mechanism." *Id.* (quoting *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1260 (Ind. 2000)).

Here, Indiana Code § 9-21-19-6 is located in the chapter entitled Entrances to State Highways from Private Property. Section two of that chapter provides, "The Indiana department of transportation shall adopt rules and requirements for private entrances, driveways, and approaches necessary to provide for drainage of the highway, preservation of the highway, and the safety and convenience of traffic on the highway." Ind. Code § 9-21-19-2. Thus, the statutory scheme is aimed at benefiting the general public rather than specific individuals. After establishing the Indiana Department of Transportation as the overseeing agency and setting forth various requirements and restrictions for approaches, the chapter indicates that a person who violates any of the chapter's provisions commits a Class C infraction. Ind. Code § 9-21-19-8. In *Coons v. Kaiser*, 567 N.E.2d 851, 852 (Ind. Ct. App. 1991), we reiterated, "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 459 (1974), reh'g denied). Moreover, in *Borne v. Northwest Allen County Sch. Corp.*, 532 N.E.2d 1196 (Ind. Ct. App. 1989), *trans. denied*, we found no private cause of action where [the] statutory scheme provided a criminal penalty for the knowing failure to report suspected child abuse. Based on the foregoing, we find that Cullop cannot maintain a private cause of action based on the duty created by Indiana Code § 9-21-19-6.

*Id.* at 408-09.

[10] Our supreme court cited *Estate of Collup* with approval in *Howard Regional Health System v. Gordon*, 952 N.E.2d 182, 187 (Ind. 2011). In *Gordon*, the plaintiff alleged that her health care providers had violated a statute governing the maintenance of health care records and that that statutory violation was negligence *per se*. Following cross-motions for partial summary judgment, the trial court concluded that "a separate cause of action for failure to maintain these records existed and that the Hospital had breached its duty to maintain records[.]" *Id.* at 185. On transfer, our supreme court held in relevant part as follows:

> "We have long-standing analytical tools for addressing whether a statute contains an implied private right of action." *Kho v. Pennington*, 875 N.E.2d 208, 218 (Ind. 2007) (Sullivan, J., concurring in part and dissenting in part). Determining whether a civil cause of action exists begins with an examination of legislative intent. *Estate of Cullop*[], 821 N.E.2d [at 408].
>
> A private party may not usually enforce rights under a statute designed to protect the public in general and which contains an enforcement provision. *Id.* "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Id.* at 409 . . . . Whether a statute creates a private right of action is a question of law for the court. *See Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505 (Ind. 2005).
>
> * * *
>
> As the statutes existed at the time of [the alleged medical malpractice], a violator of Chapter 7, Section 1, would be subject to disciplinary sanctions under the law that governs the provider's licensure, registration, or certification under Title 16 or Title 25. By contrast, a violator of Section 2 would be exposed to

the same disciplinary sanctions but would possess substantial immunity created by subsection (e).[] The language of subsection (e) in Section 2 is similar to the language added in 2009 to subsection (d) of Section 1. Recalling that Sections 1 and 2 were crafted at the same time, the legislature could have created civil liability for a violation of Section 1 and did not do so. This differential treatment says a fair amount about legislative intent as respects the law at the time relevant to this lawsuit.

Moreover, the structure of Section 1(d) reads largely as a grant of immunity to hospitals that lose records due to natural disasters. It was enacted in the wake of a storm that destroyed the medical records of a leading hospital.[] We conclude that neither the rules of statutory construction nor the history of the enactment lead to the idea that Section 1(d) confers a private remedy for the Gordons.

*Id.* at 186-88.

[11] In light of *Gordon* and *Estate of Collup*, we agree with the City that the Browns have no private cause of action for negligence *per se* under the Act. Indiana Code Section 13-2-22-13 is designed to protect the general public and contains an enforcement mechanism and remedies for violation of the duty. The trial court did not err when it entered partial summary judgment in favor of the City on this issue.

[12] We reject the Browns' contention that this court's opinion in *Phoenix Natural Resources, Inc. v. Messmer*, 804 N.E.2d 842 (Ind. Ct. App. 2004), governs and requires reversal. First, we note that the Browns ignore the City's reliance on *Estate of Collup* and make no argument that it is not controlling here. Second, in *Messmer*, the parties *conceded* that a violation of the current version of the Flood

Control Act constituted negligence *per se*, and the sole issue presented on appeal was whether the trial court erred when, in instructing the jury, it "did not permit the jury to consider evidence that Phoenix had an excuse or justification for violating" the Act. *Id.* at 847. In essence, the Browns maintain that implicit in our holding in *Messmer* that the trial court properly instructed the jury is a determination that a plaintiff may bring a private cause of action under the Act. But the Browns are incorrect. Rather, neither party raised that issue on appeal in *Messmer* and we did not otherwise consider that issue. Thus, *Messmer* does not apply here.[5]

[13] Likewise, the Browns' reliance on our supreme court's decision in *Kho v. Pennington*, 875 N.E.2d 208 (Ind. 2007), is misplaced. First, there was no majority opinion for our supreme court in *Kho*. As such, it is not binding authority. In any event, the issue in *Kho* was "whether violation of the defendant identity confidentiality provision of Indiana Code § 34-18-8-7 in the Indiana Medical Malpractice Act may give rise to an action for damages." *Id.* at 210 (plurality opinion). Writing the lead opinion, Justice Dickson began his analysis by recognizing that our courts "have a long and continuous history of recognizing negligence actions for statutory violations" and the "unexcused violation of a statutory duty constitutes negligence *per se* 'if the statute or ordinance is intended to protect the class of persons in which the plaintiff is

---

[5] Likewise, the Browns' reliance on *Stillwater of Crown Point Homeowner's Association, Inc. v. Kovich*, 865 F.Supp.2d 922 (N.D. Ind. 2011), has no applicability here.

included and to protect against the risk of the type of harm which has occurred as a result of its violation.'" *Id.* at 212 (quoting *Plesha v. Edmonds ex rel. Edmonds*, 717 N.E.2d 981, 986 (Ind. Ct. App. 1999)) (plurality opinion). The Browns maintain that, because they are within the class of persons the Act was intended to protect, and because flooding is the type of harm that the Act sought to prevent, they can pursue a claim of negligence *per se* against the City.

[14] However, we agree with then-Justice Rush that not every statute creates an implied right of action, and a claim of negligence *per se* depends on a determination of legislative intent to make a defendant liable in tort. *F.D. v. Ind. Dep't of Child Servs.*, 1 N.E.3d 131, 143 n.12 (Ind. 2013) (Rush, J., concurring in part and dissenting in part). And as our supreme court held in *Gordon*, we determine our legislature's intent by considering whether the statute is (1) designed to protect the public in general and (2) contains an enforcement provision. 952 N.E.2d at 187. Further, as we held in *Estate of Collup*, we consider whether the statute already provides remedies for a violation of its duties. 821 N.E.2d at 408. Applying those factors to the statutes at issue here, we hold that the legislature did not intend to create a private cause of action for violation of the Act. Accordingly, the Browns cannot pursue their claim that the City's violation of the Act constituted negligence *per se*.

## Issue Two: Public Nuisance

[15] The Browns also contend that they "have the right to pursue monetary damages for the [City's] creation and maintenance of a public nuisance." Appellants' Br. at 22. The Browns point out that Indiana Code Section 13-2-22-13 provides in

relevant part that "any structure, obstruction, deposit, or excavation in or on any floodway . . . which will adversely affect the efficiency of or unduly restrict the capacity of the floodway . . . [is] declared to be and to constitute [a] public nuisance[]." The Browns maintain that the Hotter Detention Facility constitutes a public nuisance and, as such, they are entitled to damages for the flooding they sustained to their real property.

[16] Generally, a public nuisance is caused by an unreasonable interference with a common right. *Blair v. Anderson*, 570 N.E.2d 1337, 1339 (Ind. Ct. App. 1991) (citing Restatement (2d) of Torts, § 821B). A private party generally has no right of action under a public nuisance because "[i]t is the province of the public authorities to procure redress for public wrongs." *Id.* (quoting *Adams v. Ohio Falls Car Co.*, 131 Ind. 375, 379, 31 N.E. 57 (1891)). However, an aggrieved party may bring a private action to abate or enjoin a public nuisance if that party demonstrates a special and peculiar injury apart from the injury suffered by the public. *Id.* at 1339-40.

[17] Here, the Browns contend that they are entitled to bring a private action for public nuisance because they suffered a "special and peculiar injury" apart from the general public. In particular, they assert that they were the only residents who sustained flooding to their real property "due to the obstructed floodway." Appellants' Br. at 45. However, in *Brown II*, in addressing the issue of whether a taking had occurred as a result of the flooding, we held as follows:

Furthermore, *the flooding damage suffered by the Browns was not special or peculiar*[] for purposes of takings analyses.[6] Burkman testified to the major flooding that occurred throughout Valparaiso during the period of time when the Browns' property flooded. City of Valparaiso qualified for federal disaster relief as a result of the storms and flooding, and the Indiana Governor declared Lake, Porter, and LaPorte counties a disaster as a result of the storm. The City sent a storm-water survey to its residents and received a response from approximately 180 residents that they suffered some sort of water-entry problem as a result of the storms. Among those problems was water entering basements through windows and doors, sewer backup, storm water standing in back yards, and basement seepage. Retention ponds overflowed and caused flooding damage. Therefore, *the evidence shows the Browns' flooding damage was neither special nor peculiar*.

2014 WL 1400198 at *7 (emphases added). For the same reasons, we hold that the Browns' damage was neither special nor peculiar for purposes of their public nuisance claim. Thus, the trial court did not err when it entered summary judgment in favor of the City on that claim.

[18] Affirmed.

Bailey, J., and May, J., concur.

---

[6] As we stated in *Bussing v. Indiana Department of Transportation*, 779 N.E.2d 98, 104 (Ind. Ct. App. 2002), *trans. denied*,

> [t]he general rule is that, before any basis for compensable damage may be obtained by an owner of real estate in an eminent domain proceeding, either some physical part of the real estate must be taken from the owner or lessor[] or some substantial right attached to the use of the real estate taken; it must be *special and peculiar* to the real estate and not some general inconvenience suffered alike by the public.

(Emphasis added).