**Joel M. SCHUMM, Appellant– Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 02A03–0608–CV–388.

Court of Appeals of Indiana.

May 21, 2007.

Joel M. Schumm, Indianapolis, IN, Appellant Pro Se.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

*Case Summary and Issues*

Following a jury trial, Joel M. Schumm appeals the determination that he operated a vehicle with improper taillights, a Class C infraction. On appeal, Schumm raises six issues, which we expand and restate as:

1. whether the trial court properly denied Schumm's motion for summary judgment;

2. whether the trial court properly denied Schumm's *Batson* challenge;

3. whether the trial court abused its discretion in excluding evidence relating to the United States Department of Transportation (the "DOT") regulations, and refusing to instruct the jury on these regulations;

4. whether the trial court abused its discretion in refusing Schumm's ten-

dered instructions relating to the civil nature of the case;

5. whether the trial court abused its discretion in excluding evidence relating to the Fort Wayne Police Department's (the "FWPD") Standard Operating Procedures ("SOPs");

6. whether the trial court properly refused to allow Schumm to proceed pro se and with co-counsel; and

7. whether the trial court abused its discretion in allowing a deputy prosecutor to testify regarding discussions with Schumm.

We conclude that the trial court properly denied Schumm's motion for summary judgment, but that it improperly overruled his *Batson* challenge. Therefore, we must remand for a new trial. Because the remaining issues are likely to recur on remand, we will discuss them as well, although they are not necessary to our decision to reverse.

### Facts and Procedural History

This appeal, which deals with a variety of legal issues, started inconspicuously enough when FWPD Officer Martim Groomes observed that Schumm's driver's side taillight was not functioning and initiated a traffic stop. Groomes cited Schumm for violating Indiana Code section 9–19–6–4, which indicates:

(a) Except as otherwise provided in this section:

(1) a motor vehicle, trailer, semitrailer, and pole trailer; and

(2) any other vehicle that is drawn at the end of a train of vehicles;

must be equipped with at least one (1) tail lamp mounted on the rear that when lighted as required in this chapter, emits a red light plainly visible from a distance of five hundred (500) feet to the rear.

(b) Only the tail lamp on the rear-most vehicle of a train of vehicles is required to be seen from the distance specified.

(c) A motor vehicle, trailer, semitrailer, pole trailer, and any other vehicle drawn at the end of a train of vehicles, excluding a truck-tractor, that is:

(1) registered in Indiana; and

(2) manufactured or assembled after January 1, 1956;

must be equipped with at least two (2) tail lamps mounted on the rear that, when lighted, complies with this section.

(d) A tail lamp upon a vehicle shall be located at a height of not less than twenty (20) inches and not more than seventy-two (72) inches.

(e) Either a tail lamp or a separate lamp must be placed and constructed so as to illuminate the rear registration plate with a white light and make the plate clearly legible from a distance of fifty (50) feet to the rear. A tail lamp or tail lamps, together with a separate lamp for illuminating the rear registration plate, must be wired so as to be lighted whenever the head lamps or auxiliary driving lamps are lighted.

A later section in the same chapter provides:

(a) This section does not apply to a person who owns or operates a vehicle or combination of vehicles that:

(1) contains parts and accessories; and

(2) is equipped;

as required under regulations of the United States Department of Transportation.

(b) A person who violates this chapter commits a Class C infraction.

Ind.Code § 9–19–6–24.

When Officer Groomes initiated the traffic stop, he was on "OWI patrol," a program funded in an attempt to combat

drunk driving. Officers assigned to OWI patrol are apparently required to either make one arrest per hour or issue one citation per hour.[1] Officer Groomes testified that when working OWI patrol, he issues a citation to the driver of every vehicle that he stops for an infraction.

Schumm, who is an attorney, filed an appearance to represent himself and requested a jury trial. Before the trial, he deposed Officer Groomes. Based upon this deposition, Schumm filed a summary judgment motion, which the trial court denied after a hearing.

Also prior to trial, the State filed a motion in limine, which the trial court granted. This motion in limine excluded the following evidence from Schumm's trial: 1) reference to the possible penalty for the infraction; 2) reference to any alleged bad acts done by the State's witnesses; 3) reference to the DOT regulations; and 4) reference to the FWPD SOPs.

During jury selection, Schumm raised a *Batson* challenge after the State used one of its peremptory strikes to remove the only African–American juror on the panel. The trial court denied this challenge, stating that Schumm was not an African–American, and therefore could not raise a *Batson* challenge.

On the day of trial, Cynthia Bedrick filed an appearance as co-counsel for Schumm. The trial court refused to allow Bedrick to serve as co-counsel, but allowed her to serve as Schumm's stand-by counsel.

During the trial, the State called Cory Spreen, a deputy prosecutor, as a rebuttal witness. Spreen testified that during the initial court calling for Schumm's case, Schumm approached him and said, "I'm an attorney from Indianapolis and I would like for this to go away." Tr. at 86. Prior to Spreen taking the stand, Schumm objected that Spreen's testimony would be irrelevant. The trial court overruled this objection.

Schumm tendered several jury instructions, which the trial court refused. The trial court refused: 1) to instruct the jury regarding Indiana Code section 9–19–6–24; 2) to give the pattern jury instruction regarding "Excuse from Statutory Violation"; 3) to instruct the jury that this was a civil case, and instead instructed the jury that this was a criminal case; and 4) to give the pattern jury instruction regarding damages.

The jury returned a verdict for the State, but did not return a verdict on damages, as the trial court had not instructed it to do so. The trial court imposed a fine of $100. Schumm now appeals the determination that he committed a Class C infraction and the $100 fine.

*Discussion and Decision*

### I. Summary Judgment

#### A. Standard of Review

Summary judgment is appropriate when the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). However, we review a trial court's decision regarding a summary judgment motion de novo, construing all facts and making all reasonable inferences from the facts in favor of the non-moving party. *Progres-*

---

**1.** Officer Groomes testified that "[t]he only requirement while working OWI patrol is that we make one (1) arrest per hour," transcript at 65, but later testimony indicates that the requirement may be only that officers issue one citation per hour, tr. at 69. Regardless, a program that conditions funding on officers either citing or arresting drivers at a certain rate causes us concern, as the motivation for fabrication or unreasonable citations or arrests is obvious.

*sive Ins. Co. v. Bullock*, 841 N.E.2d 238, 240 (Ind.Ct.App.2006), *trans. denied.* We will resolve any doubts regarding the existence of a material issue against the moving party. *Winchell v. Guy*, 857 N.E.2d 1024, 1026 (Ind.Ct.App.2006). We may affirm the trial court's decision regarding summary judgment upon any basis supported by the record. *See Rodriguez v. Tech. Credit Union Corp.*, 824 N.E.2d 442, 446 (Ind.Ct.App.2005).

### B. Officer Groomes's Testimony Leaves a Question of Material Fact

■ When Schumm filed his motion for summary judgment, he designated only the deposition of Officer Groomes. In this deposition, Officer Groomes indicated that he had stopped Schumm because either his license plate light or taillight was out. Later in the deposition, the following exchange took place:

> Schumm: Was the vehicle that I was driving equipped with parts and accessories as required under the DOT regulations?
>
> Officer: Yes, but I didn't write you the citation under the Department of Regulation, United States Department of regulation codes.
>
> Schumm: Is that a separate offense, or is that an exception to Section 4 of the statute?
>
> Officer: I don't know. It looks like just something within the Indiana Code book that, I don't know the answer to that question.

Appellant's App. at 28–29.

The State did not designate any evidence in response to Schumm's motion for summary judgment. Schumm argues that the Officer's response, "Yes," unequivocally indicates his vehicle complied with the DOT regulations, and that therefore, no question of material fact remains as to his liability. We disagree.[2] Initially, we note that Officer Groomes backtracked from his initial "Yes," leaving his response somewhat equivocal as to whether he actually believed that Schumm's vehicle complied with the DOT regulations. However, we do not have to decide whether Officer Groomes's response leaves a question of material fact, because our interpretation of the DOT regulations indicates that a vehicle must not merely have the required hardware in place, but that the hardware must be in working order. Therefore, Groomes's testimony that Schumm's taillight was not working conflicts with his testimony that Schumm's vehicle was in compliance with the DOT regulations, and a question of material fact remains.

■ The purpose of the DOT regulations is "to reduce traffic accidents ... by providing adequate illumination of the roadway, and by enhancing the conspicuity of motor vehicles on the public roads." 49 C.F.R. § 571.108(2). This purpose clearly indicates that vehicles should not only have lighting hardware installed, but also have lighting equipment that works.

The DOT regulations also indicate that "[t]he taillamps on each vehicle shall be activated when the headlamps are activated in a steady-burning state." 49 C.F.R. § 571.108(5.5.3). The common meaning of

---

**2.** On appeal, the State's sole argument regarding summary judgment is that because Schumm asked Officer Groomes whether his vehicle "was equipped" with parts and accessories instead of "contained" parts and accessories, a material fact remains as to whether Schumm's vehicle "contained" parts and accessories as required by the DOT regulations.

The State has failed to explain how a vehicle, or anything else for that matter, could be equipped with something without also containing it. However, as we will affirm a trial court's denial of a motion for summary judgment on any grounds supported by the record, the State's failure to put forth a viable argument does not require reversal.

"activate" is: "To set in motion; make active or more active: *The motor is activated by a battery*." The American Heritage Dictionary of English Language 17 (4th ed.2000). The plain meaning of this regulation is that when the headlights are on, the taillights must be on, not merely in place.

Finally, the DOT regulations indicate the required color and minimum candlepower for taillights. 49 C.F.R. § 571.108 at Figures 1 a, 1c; Tables III, IV. Candlepower refers to a bulb's "luminous intensity." The American Heritage Dictionary of English Language 271. A bulb that does not work has no luminous intensity, and would not comply with the DOT regulations' minimum candlepower requirements. For these reasons, we conclude that the DOT regulations require that one's taillights not only be installed on one's vehicle, but also work.

■ Under Indiana Code section 9–19–6–24, for the statutory exception to apply, a vehicle must be "equipped" as required by the DOT regulations. To "equip" is "to supply with whatever is necessary for efficient action." Black's Law Dictionary 558 (7th ed.1999); *see also* Appellant's Reply Brief at 3 ("An object is 'equipped' if it is 'furnish[ed] or provide[d] with whatever is needed for use or for any undertaking.'" (quoting http://dictionary.reference.com/browse/equip)). Therefore, for the exception to apply, Schumm's vehicle must have had what was necessary or needed for the required action or undertaking, namely, providing illumination. If Schumm's taillight was not illuminated, his vehicle was not "equipped" in compliance with the DOT regulations.

Officer Groomes's statement that he pulled Schumm over because his taillight was out is inconsistent with even an unequivocal statement that Schumm's vehicle complied with the DOT regulations.

Therefore, because the evidence is in conflict, a question of material fact remains, and the trial court did not improperly deny Schumm's motion for summary judgment.

## II. *Batson* Challenge

After the trial court refused to grant the State's attempt to strike juror number 6 for cause, the State used one of its peremptory challenges to strike the juror. Then, the following exchange took place:

Schumm: I would make a *Batson* challenge. She's the only African American on the jury.

Court: Are you an African American?

Schumm: No, but I have the right to assert that regardless of—

Court: How?

Schumm: The U.S. Supreme Court has said so, Your Honor. A number of causes can raise a *Batson* challenge. Third party standing, even if on behalf of the juror.

State: I'll have to re-read *Batson*. That's not my understanding of it.

Schumm: Cases have been decided since *Batson* that say that.

State: Maybe you can supply me with one.

Court: Well, can you show that she's shown a pattern of discriminatory strikes from this point?

Schumm: I was just asking for it because it's the only African American juror on the panel.

Court: Can you show that she's shown a pattern of discriminatory strikes?

Schumm: She's striking the only African American juror.

Court: That's not a pattern. I'll show your motion for the *Batson* challenge is denied as you are not an African American Defendant. And I believe the pro-

tection under *Batson* is so that a jury of one's piers [sic], being one's ethnic or racial groups would be (inaudible) on trial.

Tr. at 31–32.

■■■ Under the Equal Protection Clause of the Fourteenth Amendment, a party can not constitutionally use a peremptory challenge to strike a prospective juror solely on account of the juror's race. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). This rule applies in civil suits as well as criminal trials. *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 618, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). The *Batson* Court indicated that in order to object to a peremptory challenge on the basis of improper racial motivation, the defendant "first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." 476 U.S. at 97, 106 S.Ct. 1712 (citation omitted). However, the Supreme Court has since clarified that a party may raise a *Batson* claim regardless of his or her race. *Powers v. Ohio*, 499 U.S. 400, 415, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *see also Glover v. State*, 760 N.E.2d 1120, 1125 (Ind.Ct.App. 2002), *trans. denied.* The Supreme Court clearly articulated the rationale for such a rule, recognizing that "racial discrimination in the selection of jurors casts doubt on the integrity of the judicial process," and that "[t]he overt wrong, often apparent to the entire jury panel, casts doubt over the obligation of the parties, the jury, and indeed to the court to adhere to the law throughout the trial of the cause." *Powers*, 499 U.S. at 411–12, 111 S.Ct. 1364 (quotation omitted). "A venireperson excluded from jury service because of race

suffers a profound personal humiliation heightened by its public character. The rejected juror may lose confidence in the court and its verdicts, as may the defendant if his or her objections cannot be heard." *Id.* at 413–14, 111 S.Ct. 1364. Clear precedent and compelling rationale dictate that a party may not remove a potential juror based on his or her race, regardless of the race of the opposing party, and the trial court was incorrect to state otherwise.

■■■ When a party raises a *Batson* challenge, the trial court must engage in a three-step test. *Highler v. State*, 854 N.E.2d 823, 826 (Ind.2006). "First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race." *Id.* at 826–27. Second, "the burden shifts to the State to present a race-neutral explanation for striking the juror." *Id.* at 827. Third, the trial court must evaluate " 'the persuasiveness of the justification' proffered by the prosecutor, but 'the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.' " *Id.* at 828 (quoting *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam)). We afford great deference to a trial court's determination that a prosecutor's motivation for striking a juror was not improper, and will reverse only if we conclude the trial court's decision was clearly erroneous. *Id.*

■■■ Here, by pointing out that the State struck the sole African American juror, Schumm put forth prima facie evidence of racial discrimination. *McCants v. State*, 686 N.E.2d 1281, 1284 (Ind.1997) (holding that "removing the only prospec-

tive African–American juror ... raise[s] an inference that the juror was excluded on the basis of race"). At this point, the trial court should have asked the State to put forth a race-neutral reason for excluding the juror.[3] However, the trial court did not do so, and apparently found both that Schumm had not made a prima facie showing of discrimination and that Schumm did not have standing to raise a *Batson* challenge. Both reasons for rejecting Schumm's challenge are clearly erroneous. As discussed above, a party has standing to raise a *Batson* challenge regardless of whether that party is of the same race as the excluded juror or jurors. Further, Schumm presented a prima facie case of racial discrimination when he pointed out that the State removed the only African–American juror. The State did not provide a race-neutral explanation, as the trial court did not give the State this opportunity. Therefore, the trial court's rejection of Schumm's *Batson* claim was clearly erroneous. Because the trial court applied the wrong standard to Schumm's *Batson* claim, we reverse and remand for a new trial. *Ashabraner v. Bowers*, 753 N.E.2d 662, 668 (Ind.2001).

### III. Department of Transportation Regulations[4]

#### A. Admission of Evidence

 The trial court granted the State's motion in limine, preventing Schumm from introducing evidence relating to the DOT regulations at trial. The State argued that mention of these regulations at trial would confuse the jury, and that Schumm had "failed to show that the preemptive rights of the State and the State's laws are overruled by federal regulations." Tr. at 8–9, 14. Schumm argues that the trial court improperly granted this motion in limine.

 Initially, we note that "[r]ulings on motions in limine are not final decisions and, therefore, do not preserve errors for appeal." *Swaynie v. State*, 762 N.E.2d 112, 113 (Ind.2002). Schumm has cited to no point at which he attempted to introduce evidence related to the DOT regulations, and therefore, he has waived any objection he has on the issue. *See Black v. State*, 829 N.E.2d 607, 610 (Ind.Ct.App. 2005), *trans. denied* (holding that defendant failed to preserve issue for appeal where he failed to request relief from trial court's ruling on State's motion in limine).

---

**3.** Although we do not have a transcript of the voir dire proceedings, the trial court indicated that the juror's "position seems more to me that she just doesn't want to be here." Tr. at 31; *see Mitleider v. Hall*, 391 F.3d 1039, 1048 (9th Cir.2004), *cert. denied*, 545 U.S. 1143, 125 S.Ct. 2968, 162 L.Ed.2d 895 (2005) (prosecutor's opinion that juror "indicated she did not want to serve on the jury" was valid race-neutral explanation); *Barnett v. State*, 637 N.E.2d 826, 830–31 (Ind.Ct.App.1994) (race-neutral explanation was given where juror stated that she did not want to serve on the jury and was uncomfortable judging other people); *Lee v. State*, 898 So.2d 790, 814 (Ala.Crim.App.2001), *cert. denied*, 543 U.S. 924, 125 S.Ct. 309, 160 L.Ed.2d 222 (2004) (potential juror's desire not to serve is a race-neutral explanation for a peremptory strike); *State v. Rose*, 606 So.2d 845, 850 (La.Ct.App. 1992) (prosecutor gave race-neutral explana-

tion where juror "stated she did not want to serve and asked to be excused").

**4.** For this and all remaining issues, the State presented no argument on appeal, as it conceded that the trial court applied the wrong standard when addressing Schumm's *Batson* claim. Also, because we remand based on Schumm's *Batson* argument, we need not address whether any alleged errors in the remaining issues constitute reversible error. Therefore, we will address solely whether the trial court's rulings on the remaining issues were proper, and express no opinion as to whether any error that occurred was harmless or would require reversal. The sole purpose of addressing these issues is to provide guidance as they are likely to occur on remand.

This rule is more than a technicality. Although a motion in limine serves to protect against unfairly prejudicial evidence being placed before the jury, the ultimate determination of evidence's admissibility "is made by the trial court in the context of the trial itself." *Earlywine v. State,* 847 N.E.2d 1011, 1013 (Ind.Ct.App.2006). It is difficult, if not impossible for us to determine whether evidence Schumm might have sought to introduce was admissible, as we do not know when or in what context Schumm might have sought to introduce the evidence. However, we feel it prudent to address the general admissibility of evidence relating to the DOT regulations.

The chapter under which the State filed its information contains an explicit statement excepting those who own vehicles that contain parts and accessories and are equipped in accordance with DOT regulations. Regardless of any confusion these regulations may cause the jury, the statute explicitly states that one who is in compliance with the DOT regulations does not commit a Class C infraction for violating a section of the chapter.[5] We fail to see how evidence regarding these regulations could be categorically inadmissible, as proof of compliance with the regulations establishes that Schumm did not commit a Class C infraction. That is not to say that all evidence relating to DOT regulations would be admissible in every context; we merely recognize that because the regulations are incorporated by reference into the statute, common sense indicates that the regulations are highly relevant, as Schumm's compliance with the regulations would exempt him from liability.

### B. Jury Instructions on DOT Regulations

When reviewing a trial court's decision to give or refuse tendered instructions, we consider "whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions." *Wal–Mart Stores, Inc. v. Wright,* 774 N.E.2d 891, 893 (Ind.2002). When a party challenges an instruction as an incorrect statement of the law, we review the trial court's decision de novo. *Id.* at 893–94. When the party challenges the instruction based on the other two considerations, we will reverse only when we conclude that the trial court abused its discretion. *Id.* at 894.

Here, Schumm tendered the following two instructions:

Proposed Instruction # 2

Next, even if you find the State has met its burden in proving liability under Indiana Code Section 9–19–6–4, you must also find that the Defendant's conduct does not fall within an exception to

---

5. We note that the State could have avoided this problem by filing an information under Indiana Code section 9–21–7–2, which states:

 (a) Except as provided in subsection (b) and section 8 of this chapter, each vehicle upon an Indiana highway:
 (1) between the time from sunset to sunrise; and
 (2) at any other time when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of five hundred (500) feet ahead;

must display lighted head lamps and other illuminating devices as required for different classes of vehicles under this chapter. (b) All lamp equipment required for vehicles described in IC 9–19–6 shall be lighted at the times mentioned in subsection (a), except that clearance and sidemarker lamps are not required to be lighted on a vehicle when the vehicle is operated within a municipality if there is sufficient light to render clearly discernible persons and vehicles on the highway at a distance of five hundred (500) feet.
The chapter of which this section is a part has no exception relating to the DOT regulations.

that statute. That exception provides as follows:

(a) This section does not apply to a person who owns or operates a vehicle or combination of vehicles that: (1) contains parts and accessories; and (2) is equipped; as required under regulations of the United States Department of Transportation.

Ind.Code § 9–19–6–24

Proposed Instruction # 3

The United States Department of Transportation regulations regarding tail lamps provide as follows:

"REQUIRED MOTOR VEHICLE LIGHTING EQUIPMENT" (for passenger cars less than 80 inches overall width)

"Taillamps: 2 red"

49 C.F.R. § 571.108 S5.11 & Table III. Appellant's Brief at 13.

As stated above, no evidence was admitted during trial that supports these instructions. However, as merely affirming the trial court on this ground would provide no guidance on remand, we will comment on whether these instructions correctly state the law.

Proposed Instruction # 2 correctly states the law. Indiana Code section 9–19–6–24 explicitly excepts from liability those whose vehicles comply with the DOT regulations. *But see, supra* note 5. Depending on the evidence introduced at trial, and upon the content of the other instructions, it could be an abuse of discretion to refuse this tendered instruction.

Proposed Instruction # 3, on the other hand, although not technically incorrect, is certainly an incomplete statement of the law. As discussed above, several sections of the DOT regulations deal with taillights. Reading this section in isolation may indeed mislead the jury. A proper instruction on the DOT regulations would cover all material aspects of the regulations relating to taillights.

## IV. Civil Jury Instructions

Schumm argues that the trial court improperly refused his tendered instructions indicating the civil nature of the case and that, as a civil case, the jury was required to assess damages. We will address Schumm's proffered instructions in turn.

### A. Civil Nature of Infraction Cases

■ "Our legislature removed the protections afforded to criminal defendants when it decided [in 1981] that the Indiana Rules of Trial Procedure govern infractions and, in doing so, directed that we now treat infractions as civil matters. Thus, [cases dealing with infractions are] governed by Article I, Section 20 of the Indiana Constitution." *Cunningham v. State,* 835 N.E.2d 1075, 1077 (Ind.Ct.App. 2005), *trans. denied; see also State v. Hurst,* 688 N.E.2d 402, 405 (Ind.1997), *overruled on other grounds Cook v. State,* 810 N.E.2d 1064 (Ind.2004) ("[A]lthough traffic violations may once have been criminal offenses, traffic violations are now civil proceedings.").

Schumm objected to the portions of the trial courts' instructions that referred to the case as criminal. Namely, the trial court instructed the jury, "[s]ince this is a criminal case, the Constitution of the State of Indiana makes you the judge of both the law and the facts," appellant's app. at 82, and, "[t]his is a criminal case brought by the State of Indiana," *id.* at 83. We agree with Schumm that these instructions are incorrect statements of the law, and that the trial court erred in giving them.

In place of these instructions identifying the case as a criminal case, Schumm proffered the following instruction:

The Plaintiff, _____, has brought this lawsuit against the Defendant, _____.

The Plaintiff claims [here insert brief statement of Plaintiff's claim]. The Plaintiff has the burden of proving these claims by a preponderance of the evidence.

The Defendant denies [here insert aspects of Plaintiff's claim that Defendant disputes]. The Defendant has no burden to disprove these claims of the Plaintiff; as I already stated, it is the Plaintiff who has the burden to prove the claims.

[However, the Defendant has claimed certain defense and has the burden of proving these defense by a preponderance of the evidence. The defense are (here insert brief statement of Defendant's affirmative defense).]

Appellant's App. at 69. The trial court refused to give this instruction based on its reasoning that its substance was covered by other instructions. We agree with the trial court that its 16 other instructions covered the principle parts of this instruction. The trial court instructed the jury that the State had the burden of proving its claim by a preponderance of the evidence, and explained this standard. Although this proffered instruction correctly states the law, as long as the trial court properly instructs the jury on the burden of proof, and informs the jury as to Schumm's defenses, it would be within its discretion to refuse this specific instruction. *See Wal–Mart Stores, Inc.,* 774 N.E.2d at 893.

### B. Damages

The trial court rejected Schumm's tendered pattern jury instruction regarding damages. The tendered instruction stated:

If you find from a preponderance of all the evidence that the defendant(s) is (are) liable to the plaintiff and that plaintiff has suffered damages, then you must decide the amount of money that will fairly compensate plaintiff for each proven element of damage.

In deciding these damages, you may consider the following:

[Here insert proper elements of damages.]

Your decision must be based on the evidence relating to damages and not on guess or speculation.

Indiana Civil Pattern Jury Instruction 11.01; Appellant's App. at 71. As the trial court did not instruct the jury to assess the amount of Schumm's liability, the jury simply returned a verdict indicating that it found for the State. The trial court then imposed a fine of $100.

■ First, we recognize that the trial court improperly retained the function of assessing the amount of Schumm's liability. As discussed above, cases involving infractions are governed by the rules of civil procedure, under which it is the province of the jury to determine the amount of a defendant's liability. *See Horne v. State,* 572 N.E.2d 1333, 1335 (Ind.Ct.App. 1991), *trans. denied* ("By permitting the jury to assess the fine in this [infraction] case, the trial court's actions were consistent with the rules of civil procedure.").

■ With regard to Schumm's specific tendered instruction, however, we cannot agree that the instruction correctly states the law. Schumm's tendered instruction is the Indiana pattern instruction entitled: "No Comparative Fault—Injury to Person or Property." Indiana Civil Pattern Jury Instruction 11.01. The comment to this instruction indicates that the instruction "is for use in actions for personal injury or property damage to which the comparative fault statutes do not apply, such as actions against the State for negligence or against anyone for an intentional tort." Clearly, this case does not involve personal injury

or property damage, and we conclude it is not a proper instruction to give to a jury in a case involving a traffic infraction. Indeed, traffic infractions do not involve "damages" in the same sense as suits for tortious conduct. "Although civil in nature, a monetary judgment entered upon a finding of a violation of an infraction is the functional equivalent of a penal fine; the judgment serves to induce compliance with the statute." *Horne*, 572 N.E.2d at 1336.

Although the trial court improperly retained the function of assessing the fine, it acted within its discretion in refusing Schumm's tendered instruction. As an example, a proper instruction for the jury would be: "If you find from a preponderance of the evidence that the defendant did commit the infraction as charged and is liable therefore (sic) then it is your further duty to assess the damages in an amount not less than zero dollars not more than $____ ..."[6] *Horne*, 572 N.E.2d at 1337 (Sullivan, J., concurring) (quoting Benchbook for Traffic, Misdemeanors and Small Claims § 2.16).

### C. Excuse or Impossibility

■ The trial court also rejected Schumm's tendered pattern jury instruction on "Excuse from Statutory Violation," providing:

A person may be excused from failing to comply with Indiana Code section 9–19–6–4 if:

1. Compliance was impossible or noncompliance was excusable because of circumstances resulting from causes:

 a. beyond the person's control, and

 b. not the result of the person's negligence; or

2. An excuse or exception is specifically provided in Indiana Code section 9–19–6–24.

The person claiming the excuse has the burden to prove by a preponderance of the evidence that his conduct is excused.

Appellant's App. at 67. This pattern instruction is not from Indiana, and Schumm did not provide the source of this instruction to this court. Therefore, our review is somewhat hampered, as we are unable to put this instruction in the context of the pattern instruction manual from which it came, and we do not have any comment accompanying the instruction. Schumm claims that this instruction is a correct statement of the law, not covered by other instructions, and supported by the evidence.

Schumm argues that the evidence supported the instruction because he testified: "Before I was pulled over, I did not know that there was a taillight problem. There's nothing in the dash or any other kind of signs in the car that would alert the driver that a taillight's out on the vehicle." Tr. at 76. We disagree that this testimony supports the tendered instruction relating to impossibility or excuse.

■ Although it is possible that certain facts or circumstances will excuse a technical violation of an ordinance or statute, "facts which will excuse such a technical violation must result from causes or things beyond the control of the person charged with the violation." *Phoenix Natural Resources, Inc. v. Messmer*, 804 N.E.2d 842, 847–48 (Ind.Ct.App.2004) (quoting *Larkins v. Kohlmeyer*, 229 Ind. 391, 399, 98 N.E.2d 896, 899 (1951)) (analyzing whether violation of a statute constituted negligence per se). In regards to

---

**6.** For Class C infractions, the maximum penalty judgment that may be entered is for five hundred dollars. Ind.Code § 34–28–5–4(c).

violations of motor vehicle statutes, "[a] legal excuse ... must be something that would make it impossible to comply with the statute, something over which the driver has no control, an emergency not of the driver's making causing failure to obey the statute, or an excused or exception specifically provided in the statute itself." *Id.* at 848 (quoting *Larkins,* 229 Ind. at 400, 98 N.E.2d at 900).

Schumm did not present evidence from which a rational trier of fact could have concluded that his operating a motor vehicle without a functioning taillight resulted from circumstances beyond his control. He presented no evidence that he had inspected his taillights to ensure that they were in proper working order before he operated his motor vehicle, or any other evidence that indicates he had no control over his act of driving without functioning taillights. The fact that his vehicle does not alert him to a dysfunctional taillight does not make it impossible for him to look at his taillight. If anything, the fact that his vehicle does not alert him when a taillight is not functioning hurts his argument that he should be excused for the violation. If one's vehicle does not indicate when a taillight is out, the only way to ensure that one's taillights are in proper working order is to visually inspect them. Without any evidence indicating that it was impossible for Schumm to have known his taillight was not working or that he should be excused from failing to check his taillights, he was not entitled to an instruction on excuse or impossibility.

▮▮▮▮ Also, as the evidence introduced indicated that Schumm's taillight was not functioning, we fail to see how he could not have been negligent. The statute requiring that operators of motor vehicle have working taillights "fixes a standard of duty upon operators of motor vehicles as to tail-lights and a violation of

this statute is negligence per se." *Gerlot v. Swartz,* 212 Ind. 292, 302, 7 N.E.2d 960, 965 (Ind.1937) (dealing with former statute); *see also Colas v. Grzegorek,* 207 F.2d 705, 709 (7th Cir.1953) ("The failure to exhibit [a plainly visible taillight] would constitute negligence per se.") (dealing with former statute). Also, under Indiana statute, "[a] person may not drive or move on a highway a ... motor vehicle ... unless the equipment upon the vehicle is in good working order and adjustment." Ind.Code § 9–21–7–1. Implicit in this statute is a requirement that before operating a motor vehicle, one inspect his or her vehicle to ensure that its equipment, including taillights, works. Whether Schumm actually knew that his taillight was not functioning is irrelevant to whether he violated the statute. *Cf. Hurst,* 688 N.E.2d at 406 (recognizing that the statute for failing to yield the right-of-way does not have a scienter requirement); *Snyder v. State,* 204 Ind. 666, 672, 185 N.E. 507, 509 (Ind.1933) (where defendant was charged under statute making it an offense to operate a motor vehicle with a gross weight of over 28,000 pounds, "lack of knowledge on the part of the appellant that the motor vehicle driven by him was overloaded is not a defense to the action, and should not be considered in determining the guilt or innocence of appellant.").

The policy for requiring that drivers ensure their vehicle's lights work prior to driving on the highways is apparent: "It is generally said that an automobile is not a dangerous agency; but it is unlawful and highly dangerous to operate an automobile on the highway at night without lights, and an automobile so operated is a dangerous agency." *Opple v. Ray,* 208 Ind. 450, 455, 195 N.E. 81, 83 (1935). This clear danger requires drivers to inspect their vehicle to ensure that its lights function. Because

Schumm presented neither evidence that his act of driving with an unlit taillight was not the result of his own negligence, nor evidence that his act was a result of circumstances beyond his control, he was not entitled to the first part of the instruction, and the trial court did not abuse its discretion in refusing it.

With regard to part two of the instruction, as discussed above, Indiana Code section 9–19–6–24 provides a specific statutory exception to liability under Indiana Code section 9–19–6–4. This instruction was therefore a correct statement of law, and was not covered by other instructions. If Schumm introduces evidence that could support a finding that his vehicle complied with the DOT regulations, the trial court would abuse its discretion in refusing to give an instruction on the statutory exception.

## V. The Fort Wayne Police Department Standard Operating Procedures

The State's motion in limine also sought to exclude all reference to the FWPD SOPs. Again, Schumm has failed to preserve this issue by not requesting relief from this motion with a motion to admit specific evidence at trial. Unlike with evidence relating to the DOT regulations, we feel it would be little more than conjecture whether evidence relating to these SOPs would be admissible at trial. The SOPs provided to us cover a variety of issues, some of which may be irrelevant to the issues or misleading to the jury; other issues covered by the SOPs may be relevant. As with all evidence, admissibility would depend on the context in which it is introduced.

## VI. Co–Counsel

■ Schumm next argues that the trial court improperly refused to allow him the assistance of co-counsel Bedrick, who filed an appearance on the day of Schumm's trial. In refusing to allow Bedrick to serve as co-counsel, the trial court stated: "Indiana doesn't recognize hybrid representation. He's either proceeding on his own, or he has an attorney of record." Tr. at 4. The trial court correctly stated the law. *Miedreich v. Rank,* 40 Ind.App. 393, 82 N.E. 117, 118 (1907) ("[A] party to an action may appear in his own proper person, or by attorney, but he cannot do both."); *see Strutz v. McNagny,* 558 N.E.2d 1103, 1108 (Ind.Ct.App.1990), *trans. denied* ("[W]e are not aware of any authority and the parties have not cited us any authority that states that a party has a right to multiple attorneys at a hearing."); *cf. Radcliff v. State,* 579 N.E.2d 71, 73 (Ind.1991) ("[T]here is no constitutional right to act as co-counsel in one's own defense."); *Lockhart v. State,* 671 N.E.2d 893, 898 (Ind.Ct.App.1996) (recognizing that our supreme court "has repeatedly refused to recognize a constitutional right to hybrid representation which is the right to proceed pro se and to be represented by counsel at the same time.").

Schumm apparently argues that an exception should be made for civil litigants who are also attorneys, and cites an A.L.R. annotation, which states: "The cases are in conflict whether a litigant who is himself an attorney but who appears by counsel is entitled to help conduct the litigation." Annotation, *Right of Litigant in Civil Action Either to Assistance of Counsel Where Appearing Pro Se or To Assist Counsel Where Represented,* 67 A.L.R.2d 1102, 1109–10 (1959 & Supp.1995). We will briefly discuss the cases cited in the annotation.

In *Conroy v. Waters,* 133 Cal. 211, 65 P. 387 (1901), the trial court allowed the plaintiff-attorney to appear by attorney and in person. The California supreme court did not state that the plaintiff-attorney had a right to do so, but instead concluded that allowing the plaintiff-attor-

ney to do so "was clearly an irregularity without injury, and that no reversal of the cause should be had." *Id.* at 133 Cal. at 214, 65 P. at 388–89; *see also Scott v. Times–Mirror Co.*, 181 Cal. 345, 370, 184 P. 672, 683 (1919) (relying on *Conroy* ). The only case cited by the A.L.R. actually holding that a civil-litigant attorney has the right to both represent himself and have the assistance of counsel is *Bolan v. Egan*, 4 S.C.L 426 (2 Brev.) (1810), in which the Constitutional Court of Appeals of South Carolina held, without discussion, that the defendant-attorney "was entitled to plead his own cause, notwithstanding he had counsel employed with him."

On the other hand, several cases specifically hold that an attorney may not both represent himself and have the assistance of counsel. *See Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 422 (4th Cir.1990) ("[B]ecause the defendant and his firm were represented by retained counsel, defendant Moretz had no right to proceed pro se."); *Carter v. Holt*, 28 Cal. App. 796, 799, 154 P. 37, 39 (1915) ("[W]here a party appears in court as a litigant represented by an attorney of record, the court may insist that such attorney and not his client, appearing as a party litigant only, conduct the trial."); *Flaacke v. Jersey City*, 33 N.J.Eq. 57, 1880 WL 7609, at *3 ("In a suit against an attorney he cannot conduct his defence both in person and by attorney."); 67 A.L.R.2d at 1109 (citing *Newton v. Chaplin*, 10 CB 356, 138 Eng Reprint 144 (1850), and stating that the *Newton* court held the attorney-plaintiff "could not be

heard in person and also by his counsel, the court saying that the fact that the plaintiff was a member of the bar did not place him in a better position in this respect than another person and that it had no discretion to hear both.").

 We conclude that attorneys who elect to go pro se are not entitled to also retain co-counsel, as we find no justification for extending this benefit to pro-se attorneys while denying it to other litigants who elect to go pro-se. Pro-se litigants are held to the same rules and standards as licensed attorneys. *Goossens v. Goossens*, 829 N.E.2d 36, 43 (Ind.Ct.App. 2005). We see no compelling reason to hold attorneys electing to go pro-se to different rules than non-attorneys representing themselves.[7] We conclude that the trial court properly denied Schumm the ability to represent himself and be represented by co-counsel.

## VII. Deputy Prosecutor Spreen's Testimony

 On cross-examination, the State asked Schumm whether during his first appearance in this matter, Schumm had approached Deputy Prosecutor Cory Spreen and said, "I'm an attorney from Indianapolis, how do I make this go away?" Tr. at 82. Schumm denied making this statement. The State then called Spreen as a rebuttal witness. Over Schumm's objection, Spreen testified that Schumm had approached Spreen and "introduced himself as Joel Schumm. He said he had a case. I pulled the case, I didn't realize at first the case that I had was his

7. We recognize that Schumm requested co-counsel for the purpose of questioning him, thereby avoiding his need to testify in narrative form, and that had Schumm's co-counsel done only this, there appears to be no compelling reason for the court to have disallowed Schumm the assistance of co-counsel. However, as the trial court noted, allowing Schumm to represent himself and be represented by counsel could cause some delay. We also note that Bedrick did not file an appearance until the day of Schumm's trial, and that the State, therefore, had "prepared its case as if Mr. Schumm would be pro-se." Tr. at 3–4.

case. He said my name is Joel Schumm. I'm an attorney from Indianapolis and I would like for this to go away." *Id.* at 86.

Schumm objected to this testimony on the basis that whether or not he made this statement is irrelevant. The State argued at trial that Spreen's testimony is relevant to Schumm's credibility, and the trial court overruled Schumm's objection. Schumm now argues that the trial court abused its discretion in admitting the evidence.

We afford a trial court's decision to admit evidence substantial deference. *Tynes v. State*, 650 N.E.2d 685, 687 (Ind.1995). We review a trial court's decision to determine only whether the trial court abused its discretion. *Collins v. State*, 826 N.E.2d 671, 677 (Ind.Ct.App.2005), *trans. denied*, *cert. denied*, —— U.S. ——, 126 S.Ct. 1058, 163 L.Ed.2d 885 (2006). We will find that a trial court has abused its discretion when its decision is "clearly against the logic and effect of the facts and circumstances before it." *Id.*

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evid. Rule 401. "Evidence which is not relevant is not admissible." Ind. Evid. Rule 403. "In order to be admissible, the evidence need only have some tendency, however slight, to make the existence of the fact more or less probable, or tend to shed any light upon the guilt or innocence of the accused." *Lycan v. State*, 671 N.E.2d 447, 453 (Ind.Ct.App.1996).

We agree with Schumm that Spreen's testimony is not relevant to any issue of material fact. Schumm's statement to

Spreen in no way tends to make it more or less probable that Schumm operated his vehicle with a non-working taillight. To the extent that Schumm's statement comments on his credibility, "[f]or the purpose of attacking or supporting the witness's credibility ... specific instances may not be inquired into or proven by extrinsic evidence." Ind. Evid. Rule 608(b).[8]

We conclude that Spreen's testimony was not relevant as to any material fact, and that the trial court abused its discretion in allowing Spreen to testify as to Schumm's statement.

### Conclusion

We conclude that the trial court properly denied Schumm's motion for summary judgment, but that it improperly denied Schumm's *Batson* challenge. Therefore, we reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

BAKER, C.J., and DARDEN, J., concur.

---

**8.** We recognize that Schumm did not object to Spreen's testimony on the basis of this rule, and argued only that the testimony was not relevant. Also, because the issue was not argued, we do not specifically address wheth-
er this statement was made in the course of a compromise negotiation. *See* Ind. Evid. Rule 408 ("Evidence of conduct or statements made in compromise negotiations is ... not admissible.").