ATTORNEY FOR HON.
DIANNA L. BENNINGTON, JUDGE

Robert G. Forbes
Hartford City, Indiana

ATTORNEYS FOR THE COMMISSION
ON JUDICIAL QUALIFICATIONS

Adrienne L. Meiring
Mary Elizabeth Daulton
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 18S00-1412-JD-733

IN THE MATTER OF THE HONORABLE
DIANNA L. BENNINGTON, JUDGE
OF THE MUNCIE CITY COURT

## JUDICIAL DISCIPLINARY ACTION

**February 10, 2015**

**Per Curiam.**

This matter comes before the Court as a result of a judicial disciplinary action brought by the Indiana Commission on Judicial Qualifications ("Commission") against the Respondent, Dianna L. Bennington, Judge of the Muncie City Court. Article 7, section 4 of the Indiana Constitution and Indiana Admission and Discipline Rule 25 give the Indiana Supreme Court original jurisdiction over this matter.

Subsequent to the filing of formal charges by the Commission, the parties jointly tendered a "Statement of Circumstances and Conditional Agreement for Discipline" stipulating to certain facts and violations of the Code of Judicial Conduct. This Court accepted the parties' joint submission and agreed sanction by an order issued on January 23, 2015, which permanently banned the Respondent from serving in any judicial capacity of any kind, including but not limited

to service as a judge *pro tempore*, temporary judge, or private judge. The order also required the Respondent to tender her resignation to the Governor by January 28, 2015, which she has done. The Respondent will be assessed certain costs agreed to by the parties in a separate order taxing costs, but she will be permitted to retain her license to practice law in Indiana.

The stipulated facts and violations fall into four categories: (a) misuse of judicial authority; (b) failure to follow proper legal procedures in guilty plea and sentencing hearings; (c) injudicious behavior outside of the courtroom; and (d) noncooperation with the Commission.

## I. Misuse of judicial authority

On August 27, 2013, defendant John W. Ewing ("Ewing") appeared before the Respondent for a bench trial on one count of cruelty to an animal, a Class A misdemeanor. *See* Ind. Code § 35-46-3-7 (2013). He was unrepresented, since the Respondent had denied his earlier request for a public defender. Following the hearing, the Respondent found Ewing guilty and ordered him to meet with a probation officer for a presentence investigation to be completed.

On November 19, 2013, Ewing appeared before the Respondent, again without counsel, for sentencing. While testifying about the current whereabouts of the dog at issue on the convicted count, Ewing also referred to other dogs in his possession or under his control. The Respondent questioned him about these other animals but was not satisfied with his responses. She therefore found him in contempt and ordered him jailed until further order of the court. She did not (a) sentence Ewing to a set time in jail for contempt, (b) indicate when he would be released, (c) reduce her order to writing as Indiana Code section 34-47-2-4 requires, (d) appoint him an attorney before jailing him for contempt, nor (e) inform him of his right to appeal his contempt sentence. *Cf.* State ex rel. Allen v. Vermillion Cir. Ct., 248 Ind. 258, 262-63, 226 N.E.2d 324, 326 (1967) (ordering expungement of contempt convictions where judge failed to follow procedures in predecessor statute to Indiana Code section 34-47-2-4).

The parties agree that the Respondent abused her contempt powers by not imposing a determinate contempt sentence, not reducing her order to writing as required by statute, and not affording Ewing other due process considerations before jailing him for an alleged contemptuous

2

act—thereby violating Rules 1.1,[1] 1.2,[2] 2.2,[3] and 2.5(A)[4] of the Code of Judicial Conduct and committing conduct prejudicial to the administration of justice.

The Respondent also abused her contempt powers in a matter involving Curtis L. Westbrook. On February 10, 2014, before the Respondent took the bench, Westbrook entered the courtroom and distributed about twenty to twenty-five copies of a letter to individuals seated therein. The letter, titled "One Term Bennington," accused the Respondent of failing to advise defendants about their right to a jury trial and provided information about the Respondent's term in office. The court's bailiff escorted Westbrook outside and, after reviewing the letter, informed Westbrook that he was not permitted to pass out the letter in the courtroom and instructed Westbrook not to go back into the courtroom.

The following day, Westbrook came back to the Respondent's court because his son had a hearing that day. Westbrook was arrested for contempt of court and held in the Delaware County Jail for ten days. At no time from February 10 - 21, 2014 did the Respondent: (a) bring Westbrook before her to inform him of the alleged nature of the contempt or otherwise provide him with an opportunity to explain, apologize, or give additional information about his allegedly contemptuous act(s); (b) inform him of his right to appeal a contempt sentence; (c) orally inform him of the length of his contempt sentence; or (d) verify that he received a written contempt order that was noted on the court's chronological case summary ("CCS") on February 11, 2014. *Cf.* Allen, 248 Ind. at 262-63, 226 N.E.2d at 326.

The parties agree that the Respondent abused her contempt powers by ordering Westbrook arrested and jailed for contempt without informing him of the alleged nature of the contempt, giving him an opportunity to explain, apologize, or give additional information about

[1] Rule 1.1 provides, "A judge shall comply with the law, including the Code of Judicial Conduct." Ind. Judicial Conduct Rule 1.1 (2014) (definitional asterisk omitted).

[2] Rule 1.2 provides, "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Jud. Cond. R. 1.2 (definitional asterisks omitted).

[3] Rule 2.2 provides, "A judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." Jud. Cond. R. 2.2 (definitional asterisks omitted).

[4] Rule 2.5(A) provides, "A judge shall perform judicial and administrative duties competently, diligently, and promptly." Jud. Cond. R. 2.5(A).

the alleged contemptuous act(s), and by not providing Westbrook with sufficient due process prior to ordering him jailed for contempt—thereby violating Rules 1.1, 1.2, 2.2, 2.5(A), and 2.6(A)[5] of the Code of Judicial Conduct and committing conduct prejudicial to the administration of justice.

On June 14, 2012, defendant Jonathan Proctor ("Proctor") appeared before the Respondent for a bench trial on one count of illegal possession of tobacco, a Class C infraction. *See* I.C. § 35-46-1-10.5 (2008). The Respondent found in the State's favor and at a subsequent hearing ordered Proctor to pay a fine and costs, as well as to complete twenty hours of community service and to write a report on the dangers of tobacco use. When Proctor failed to pay the fine and costs and to complete the Respondent's other assignments, the Respondent authorized the issuance of a bench warrant for Proctor's arrest. Proctor was arrested and spent the night in the Delaware County Jail before a judge *pro tempore* released him.

The maximum penalty for a Class C infraction that is a non-moving violation under Indiana Code section 34-28-5-4(c) is a $500 fine, and the statute provides no authority for a judge to impose any other form of sentence. *See* I.C. § 34-28-5-4(c) (2012). *See also* Schumm v. State, 866 N.E.2d 781, 794 n.6 (Ind. Ct. App. 2007) (noting the maximum penalty for a Class C infraction is $500.00). The parties agree that by imposing upon Proctor a sentence outside her authority and by authorizing the issuance of an arrest warrant when Proctor did not comply with the unauthorized sentencing terms, the Respondent violated Rules 1.1, 1.2, 2.2, and 2.5(A) of the Code of Judicial Conduct and committed conduct prejudicial to the administration of justice.

On February 10, 2014, defendant Tory M. Gillenwater ("Gillenwater") appeared before the Respondent on one count of cruelty to an animal, a Class A misdemeanor. *See* I.C. § 35-46-3-7. Gillenwater and the deputy prosecutor tendered a plea agreement with a proposed sentence to the Respondent, who made derogatory statements about the charged count and proposed sentence. The Respondent accepted Gillenwater's guilty plea but rejected the plea agreement.

---

[5] Rule 2.6(A) provides, "A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law." Jud. Cond. R. 2.6(A) (definitional asterisk omitted).

Instead, she ordered Gillenwater to meet with a probation officer for presentencing investigation, and set a future sentencing date, though the parties had requested neither of these procedures.

Under Indiana Code section 35-35-3-3, the trial court has no authority to alter a plea agreement, but must either accept it or reject it. *See* I.C. § 35-35-3-3 (2014); St. Clair v. State, 901 N.E.2d 490, 492-93 (Ind. 2009) (quoting the statutory language, "[i]f the plea agreement is not accepted, the court shall reject it before the case may be disposed of by trial or by guilty plea. If the court rejects the plea agreement, subsequent plea agreements may be filed with the court, subject to the same requirements that this chapter imposes upon the initial plea agreement . . . ."). The parties agree that by accepting Gillenwater's guilty plea but rejecting the plea agreement and *sua sponte* ordering a presentencing investigation, the Respondent violated Rules 1.1, 1.2, 2.2, and 2.8(B)[6] of the Code of Judicial Conduct.

## II. Failing to follow proper procedures

The day after jailing Mr. Ewing for contempt as discussed in Part I above, the Respondent ordered him transported back to her court to continue the sentencing hearing. The Respondent did not notify the Delaware County Prosecutor's Office of the continuance, but proceeded with the sentencing hearing with no prosecutor present, violating the Indiana Rules of Criminal Procedure. *See* Ind. Crim. Rule 10.1 (requiring in part that "the Prosecuting Attorney or a deputy prosecuting attorney shall be present at all felony or misdemeanor proceedings" except the initial hearing).

Further, from 2012 through June 1, 2014, the Respondent failed to require the recording of misdemeanor guilty plea and misdemeanor sentencing hearings in the court. This failure violated Indiana Rules of Criminal Procedure 5 and 10, which require the recording of all such proceedings in both misdemeanor and felony cases. *See* State v. Scales, 593 N.E.2d 181, 184 (Ind. 1992) ("Indiana Criminal Rule 5 provides for the recording of all oral evidence given in all cases and hearings. Indiana Criminal Rule 10 specifically requires that guilty plea proceedings

---

[6] Rule 2.8(B) provides in relevant part: "A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials, and others with whom the judge deals in an official capacity . . . ." Jud. Cond. R. 2.8(B) (definitional asterisks omitted).

be recorded and that such records . . . be maintained as a . . . court record for ten years in all misdemeanors or fifty-five years in all felony cases.") (internal quotation marks omitted).

The parties agree that by conducting a sentencing hearing without the prosecutor present, the Respondent violated Rules 1.1, 1.2, 2.2, 2.5(A), 2.6(A), and 2.9(A)[7] of the Code of Judicial Conduct. The parties also agree that by failing to enforce the legal requirement that guilty pleas and sentencing hearings be recorded in misdemeanor cases, the Respondent violated Rules 1.1, 1.2, and 2.5(A) of the Code of Judicial Conduct and committed conduct prejudicial to the administration of justice.

### III. Injudicious behavior in personal life

J.W. is the biological father of the Respondent's twin children, born in May 2013. The Respondent was unhappy with J.W.'s responses in their discussions about child support for the children. On August 2, 2013, the Respondent posted a comment in response to a photo of J.W. and his girlfriend (A.S.) posted on J.W.'s Facebook page: "Must be nice to take such an expensive trip but not pay your bills. Just sayin'." Her comment remained visible to others who had access to J.W.'s Facebook page for at least one hour before the Respondent deleted it.

On August 19, 2014, J.W. was scheduled to have his first visitation with the children since an August 14, 2014 paternity hearing, but he was unsure where to pick up the children at the scheduled time of 5:00 p.m., so he attempted to contact the Respondent numerous times via text message and telephone on the afternoon of August 19. The Respondent did not answer. J.W. went to the children's daycare, accompanied by a sheriff's deputy, at 4:50 p.m. The Respondent arrived shortly thereafter. At the time, she believed the paternity order required J.W. to pick up the children at her home rather than the daycare, and for approximately fifteen to twenty minutes, she yelled at J.W. in the daycare and in the parking lot, making various

---

[7] Rule 2.9(A) provides, except in limited circumstances not present here, "[a] judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter . . . ." Jud. Cond. R. 2.9(A).

derogatory comments about him. Daycare employees and other parents arriving to pick up their children observed the Respondent's disruptive conduct.

On September 21, 2014, when J.W. went to the Respondent's home to pick up the children for a scheduled visitation, the Respondent had a verbal confrontation with him in her driveway, then got into her vehicle and followed him to A.S.'s home a few blocks away, where she continued yelling at him. As A.S. came out of the house, J.W. told the Respondent to go home, but the Respondent continued to yell at both J.W. and A.S., insisting that A.S. not be around the children. After A.S. told the Respondent she would call the police if the Respondent did not leave, the Respondent used profanity and referred to A.S. (who is African-American) with a racial slur. When J.W., A.S., and the children then left to drive to J.W.'s sister's house, the Respondent followed them for ten to fifteen minutes, then as she passed them, yelled a profane statement out the window to A.S.

Judges have a responsibility to "act at all times in a manner that promotes public confidence in the . . . integrity . . . of the judiciary . . . [and to] avoid impropriety." Jud. Cond. R. 1.2. *See also* Matter of Pfaff, 838 N.E.2d 1022 (Ind. 2005) (after judge was involved in unseemly altercation with others regarding a family issue, accepting judge's resignation and instituting permanent ban from office noting, among other things, judge's violation of predecessor to Rule 1.2). The parties agree that the Respondent's injudicious comment on J.W.'s Facebook page and public conduct below the standard expected from judges violated Rule 1.2 of the Code of Judicial Conduct.

### IV. Noncooperation with the Commission

During the Commission's investigation into this matter, the Respondent (1) provided incomplete answers to the Commission's requests for information; (2) failed to respond to Commission communications in a timely manner or at all; (3) failed to respond to the Commission's subpoena *duces tecum* concerning the Ewing and Westbrook contempt cases; and (4) failed to appear for depositions in this matter. Judges have an obligation to cooperate with

the Commission.  *See* Jud. Cond. R. 2.16(A).[8]  *See also* <u>Matter of Brown</u>, 4 N.E.3d 619, 629 (Ind. 2014) ("A judge investigated by a disciplinary agency has a duty to cooperate in the investigative process.").  The parties agree that the Respondent violated Rule 2.16(A) of the Code of Judicial Conduct by delaying responses or failing to respond to the Commission's lawful requests for information, and by not appearing for depositions for which she had been properly noticed.

The Respondent and the Commission have agreed that for her violations of the Code of Judicial Conduct as described herein, the Respondent shall be permanently banned from serving in any judicial capacity of any kind, including but not limited to service as a judge *pro tempore*, temporary judge, or private judge.  As required by this Court's order accepting the parties' agreement, the Respondent has tendered her resignation to the Governor.  The Respondent will pay certain costs related to these proceedings as agreed by the parties.  Finally, the Respondent is permitted to retain her license to practice law in Indiana.

This discipline terminates the disciplinary proceedings relating to the circumstances giving rise to this cause.  An order taxing costs will be issued separately.

All Justices concur.

---

[8] Rule 2.16(A) provides in full, "A judge shall cooperate and be candid and honest with judicial and lawyer disciplinary agencies."  Jud. Cond. R. 2.16(A).