**Matthew Jon EARLYWINE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 48A02–0510–CR–930.**

Court of Appeals of Indiana.

May 24, 2006.

William Byer, Jr., Byer & Byer, Anderson, for Appellant.

Steve Carter, Attorney General of Indiana, Deanna L. Brunner, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Matthew Earlywine appeals his conviction for Intimidation, as a Class A misdemeanor, following a jury trial. He presents two issues for our review, namely:

1. Whether the trial court abused its discretion when it denied his motion in limine.

2. Whether the State presented sufficient evidence to sustain his conviction.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On January 28, 2004, Earlywine's wife at the time, Brittany, was at Josh Bailey's house in Madison County. Also present at Bailey's house were Bailey's wife, Holly; Rebecca Misner; and Jason Fruiggero. Earlywine called Bailey's house and asked to speak to Brittany. When she got on the phone, Earlywine asked if she was coming home, and Brittany told him no. Over the course of the next hour, Earlywine called over twenty times. Following a conversation with Earlywine, Brittany began crying and appeared upset and nervous.

At one point, Earlywine drove to Bailey's house and parked outside. From there, he called Bailey's house and spoke to Bailey. Earlywine told Bailey that he wanted his wife to come home and "that anybody that was standing in his way was gonna [sic] get it." Transcript at 93. Thereafter, Misner called the police. The police arrested Earlywine, and the State charged him with intimidation, as a Class D felony.

Before trial, Earlywine filed a motion in limine to prevent the State from eliciting any evidence of alleged batteries Earlywine had previously committed against Brittany. Following a hearing, the trial court denied Earlywine's motion. At trial, Earlywine objected, based on the grounds he had asserted in his motion in limine, when the State asked Brittany and Misner if they were afraid of Earlywine on the night of the incident. The trial court overruled his objection, and both women stated that they were afraid of him. Earlywine also objected when the State asked Brittany if she had ever had a physical altercation with Earlywine. Again, the trial court overruled his objection, and Brittany stated that she had not had a physical altercation with him. Ultimately, a jury found him guilty of a lesser included charge, intimidation, as a Class A misdemeanor, and the trial court entered judgment accordingly. This appeal ensued.

### DISCUSSION AND DECISION

#### Motion in Limine

Earlywine contends that the trial court abused its discretion when it denied his motion in limine. Specifically, he maintains that the trial court abused its discretion when it allowed witnesses to testify about their fear of Earlywine. We cannot agree.

■ A motion in limine is used as a protective order against prejudicial questions and statements being asked during trial. *Clausen v. State*, 622 N.E.2d 925, 927 (Ind.1993). The ruling does not determine the ultimate admissibility of the evidence; that determination is made by the trial court in the context of the trial itself. *Id.* Because the pre-trial denial of a motion in limine is a preliminary ruling, this denial alone is insufficient to preserve error for an incorrect ruling on the motion. *Id.* at 927–28. By requiring that an objection be made during the trial at the time when the testimony is offered into evidence, the trial court is able to consider the evidence in the context in which it is being offered and is able to make a final determination on admissibility. *Id.* at 928.

In the present case, Earlywine filed a motion in limine to prohibit the State from "eliciting any testimonial and/or video evidence alluding to any batteries alleged to have been perpetrated by [Earlywine] upon Brittany[.]" Appellant's App. at 7. After a hearing, the trial court denied Earlywine's motion. At trial, Earlywine objected when the State asked Brittany if she was afraid to go with Earlywine that evening. Earlywine's objection incorporated the arguments he had made in his motion in limine, and the trial court denied his objection. Brittany stated, "[Earlywine] was very upset … that … I didn't want to come home." Transcript at 45. Then, the State asked Misner if she was fearful of Earlywine, and she said that she was. Again, Earlywine objected, claiming Misner's state of mind was irrelevant to the intimidation charge. Once more, the trial court overruled his objection.[1]

■ On appeal, Earlywine alleges that the trial court abused its discretion when it allowed Brittany and Misner to testify that they were afraid of Earlywine. In particular, he maintains that their trial testimony referred to his prior actions, in violation of Indiana Evidence Rule 404(b). Rule 404(b) provides in part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident …." This rule is designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities, the so-called "forbidden inference." *Hicks v. State*, 690 N.E.2d 215, 218–19 (Ind. 1997).

■ When faced with a 404(b) question, Indiana courts must do two things: (1) decide if the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. *Id.* at 219. But here, we need not engage in such an analysis because Earlywine's attempt to characterize the issue as one involving 404(b) is misplaced. Brittany and Misner's testimony does not concern evidence of other crimes, wrongs, or acts. Rather, the State asked both witnesses whether they were afraid of Earlywine when he called Bailey's residence and demanded that Brittany leave with him.

---

1. Although Earlywine objected at trial and claimed that whether Brittany and Misner were afraid of him was irrelevant, he does not assert that claim on appeal. Rather, he only claims that their testimony was inadmissible because it referred to prior bad acts. Consequently, we need not address whether the trial court abused its discretion when it determined that their testimony was relevant and, therefore, admissible.

The State, however, notes that near the end of Brittany's testimony on direct examination, the State asked her if she had ever had a physical altercation with Earlywine. Earlywine objected, but the trial court allowed Brittany to answer. She stated, "Not so much physical, no." Transcript at 47. The State asked what she meant by "not so much physical," and Brittany responded, "More that I was fearful from what he said he would do. More emotional and mentally than anything." *Id.* The clear import of her testimony is that she had not had a physical altercation with Earlywine. Thus, his contention that Brittany's testimony was improper in that it referred to a prior battery is without merit because she expressly denied that such an incident ever occurred. Indeed, at trial following Brittany's testimony, Earlywine renewed his motion in limine as to other witnesses testifying about prior batteries that he had committed against Brittany. In so doing, Earlywine's attorney acknowledged that, at most, Brittany's testimony admitted that there was emotional, not physical, abuse. Therefore, Earlywine has not shown that the trial court abused its discretion when it allowed the challenged testimony.

### Sufficiency

■ Earlywine further contends that the State presented insufficient evidence to support his conviction for intimidation. When reviewing a claim of insufficient evidence, we neither reweigh evidence nor judge witness credibility. *Townsend v. State,* 753 N.E.2d 88, 90 (Ind.Ct.App.2001). We consider only the evidence and reasonable inferences favorable to the verdict and determine whether there is sufficient evidence of probative value to support the conviction. *Id.* To convict Earlywine of intimidation, the State had to prove that he communicated a threat to another person, with the intent that the other person engage in conduct against the other person's will. Ind.Code § 35–45–2–1(a)(1).

The statute defines "threat" as an "expression, by words or action, of an intention to unlawfully injure the person threatened or another person, or damage property." *Id.* at (c)(1).

Here, Earlywine called Bailey's residence at least twenty times. Moreover, Bailey testified that Earlywine called the house and demanded that Brittany "come home and that anybody that was standing in his way was gonna [sic] get it." Transcript at 93. Bailey also testified that he felt threatened by Earlywine and did not want to allow him in his home. But Earlywine maintains that the State presented insufficient evidence because of a discrepancy between Bailey's testimony and what he had told Officer Rick Hay of the Anderson Police Department on the night of the incident. Specifically, Earlywine contends that there is insufficient evidence to support his conviction because Bailey testified that Earlywine said everyone was going to "get it," *id.,* but Bailey had previously told Officer Hay that Earlywine said people would get "knocked off," *id.* at 117. This amounts to a request to judge the credibility of the witnesses, which we cannot do. *See Townsend,* 753 N.E.2d at 90.

Once more, when reviewing a claim of insufficient evidence, we consider only the evidence and reasonable inferences favorable to the judgment and determine whether there is sufficient evidence of probative value to support the conviction. *Id.* Here, the evidence favorable to the judgment demonstrates that Earlywine drove to Bailey's home and parked outside the residence. Earlywine also placed numerous calls to Bailey's home and threatened him at least twice. Specifically, he demanded that his wife come home and, if she did not, anyone in his way would "get it." Transcript at 93.

We have previously held that threats of potential, nonspecific violence constitute a

threat to commit a forcible felony. *Huber v. State,* 805 N.E.2d 887, 891 (Ind.Ct.App. 2004) (concluding that defendant's statement that "things were not going to be real pretty" if domestic violence advocate continued to act for wife could be construed to mean that defendant would physically hurt advocate if she continued to help wife); *Williams v. State,* 677 N.E.2d 1077, 1079 (Ind.Ct.App.1997) (holding that defendant's statement that "[you] better not testify against [me]," was sufficient to sustain his conviction for a count of intimidation, as a Class D felony). Here, because Earlywine appeals from his conviction for intimidation, as a Class A misdemeanor, the State did not have to prove that Earlywine threatened to commit a forcible felony. Rather, it only had to establish that he communicated a threat with the intent that Bailey engage in conduct against Bailey's will, namely, that he threatened to harm Bailey if Bailey did not allow Earlywine in the house to see his wife. *See* Ind.Code § 35–45–2–1(a)(1). Thus, Earlywine's statement that Bailey or anyone else standing in his way would "get it," is sufficient to sustain his conviction for intimidation, as a Class A misdemeanor.

Affirmed.

SHARPNACK, J., and ROBB, J., concur.