**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 25 2012, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**EUGENE C. HOLLANDER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| SCOTT W. SCHWICHTENBERG, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 35A04-1109-CR-536 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE HUNTINGTON CIRCUIT COURT
The Honorable Thomas M. Hakes, Judge
Cause No. 35C01-1101-FB-16

**June 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Scott W. Schwichtenberg appeals from his conviction after a jury trial of one count of Incest[1] as a class C felony. Schwichtenberg presents the following issues[2] for our review:

1. Did the trial court commit reversible or fundamental error by prohibiting the defendant from discussing during voir dire the differences between the burden of proof in civil and criminal cases?

2. Was there sufficient evidence to support Schwichtenberg's conviction?

We affirm.

In September 2002, when J.I. was seventeen years old, she lived with Schwichtenberg, who was her father, and her brother in Huntington, Indiana. J.I. described Schwichtenberg as having a controlling personality. J.I.'s mother had committed suicide when J.I. was thirteen years old. On September 21, 2002, J.I. and Schwichtenberg had sexual intercourse in his bedroom. Schwichtenberg ejaculated on J.I.'s body and provided her with a maroon-colored pair of his underwear to remove the semen. J.I. did so and showered.

Later that day, J.I. went to a fair with her boyfriend and some friends. During an argument with her boyfriend, J.I. began to cry and told her boyfriend about what had occurred that day. She also told her boyfriend that Schwichtenberg had been molesting her since she was fifteen years old. The mother of one of J.I.'s friends drove her to the police station where she was interviewed by Huntington Police Detective Richard Hochstetler. J.I. gave him a detailed description of the incest and provided the location of Schwichtenberg's maroon underwear. J.I. stayed with the police and was placed in foster care.

---

[1] Ind. Code Ann. § 35-46-1-3 (West, Westlaw current through legislation effective May 31, 2012).

[2] In the conclusion section of Schwichtenberg's opening brief, he concludes by stating that "his sentence should be set aside or modified." *Appellant's Brief* at 26. Because Schwichtenberg has included no argument on the issue of his sentencing, we do not address it here.

At approximately 4:00 a.m. the next morning, September 22, 2002, Detective Hochstetler went to Schwichtenberg's house. Schwichtenberg answered the door and Detective Hochstetler told him that he needed to come to the police station for questioning. Schwichtenberg did not inquire about J.I. or ask why there was a need for questioning. At the police station, Schwichtenberg waived his Miranda rights and spoke to Detective Hochstetler about J.I.'s report. When Detective Hochstetler explained J.I.'s allegation, Schwichtenberg stated, "I never forced her to do anything, I didn't rape her." *Transcript* at 339. Later in the interview, Schwichtenberg asked the officer "if it would make a, a difference in my investigation if the, if the sex with his daughter was consensual or if, would it make a difference if it would have been her idea to do it." *Id*.

Police officers obtained a search warrant for Schwichtenberg's house and found a pair of maroon men's underwear in Schwichtenberg's bedroom. Subsequent forensic testing of the underwear found it to be stained with Schwichtenberg's semen.

The State charged Schwichtenberg with two counts of incest as a class B felony, alleging that the crimes occurred from August 2001 through September 8, 2001. The third and fourth counts alleged that from September 9, 2001 through September 21, 2002, Schwichtenberg committed incest as a class C felony.

Schwichtenberg's sister and parents called J.I. at her foster home and told her that Schwichtenberg was being beaten in jail. J.I. believed that they were trying to make her feel guilty for reporting the incest. J.I. remained in contact with her father by telephone and meetings in public places. Schwichtenberg and his father offered J.I. money to buy a car and a house if she recanted her statement to police about the incest. Schwichtenberg also told J.I.

3

that he suffered from cancer and discussed committing suicide. Eventually, J.I. decided to claim that she had lied about the incest because she wanted to be reunited with her family. She was also worried for her brother and that her father would kill himself. J.I. told Schwichtenberg that she was going to recant; he then coached her about what to say. J.I. contacted Schwichtenberg's attorney, who scheduled a deposition during which J.I. testified that the incest did not happen.

J.I. found out that she was pregnant with twins she later learned were fathered by her boyfriend. J.I. had been having problems in school and feared she would be removed from foster care and placed in a juvenile facility. She and her boyfriend decided to leave Huntington. To that end, Schwichtenberg gave J.I. $300.00, his wedding ring, and her mother's wedding ring. J.I. and her boyfriend traveled to Florida where they stayed with Schwichtenberg's parents. Schwichtenberg's parents became concerned that they might be in trouble for allowing J.I. and her boyfriend to live with them while authorities were looking for the two. Schwichtenberg's parents paid the airfare for J.I. and her boyfriend to fly to California to stay with her boyfriend's family.

J.I. and her boyfriend returned to Huntington and were married. After the birth of J.I. and her husband's third child, they moved to Wisconsin, where Schwichtenberg and his family lived. J.I. remained upset by her father's violation of his position of trust, but wanted her children to know their extended family. J.I. received counseling and later returned to Huntington with her husband and children.

J.I. had a massive mental breakdown at work and upon returning home after several days in a behavioral health facility, reconsidered her decision to recant her allegation of

incest. J.I. contacted the prosecutor's office and asked if the case against her father could be reopened.

Schwichtenberg was charged with four counts of incest. After a trial by jury, Schwichtenberg was found guilty of one count of class C felony incest and was acquitted of the other counts. The trial court sentenced Schwichtenberg to seven and one-half years executed. Schwichtenberg now appeals.

1.

Schwichtenberg argues that the trial court improperly granted the State's motion in limine seeking to prohibit any discussion during voir dire or at other stages of the proceedings of the differences between the burden of proof in civil and criminal trials. He claims that this restriction prevented him from determining whether prospective jurors could render a fair and impartial verdict. He contends that this error is reversible and necessitates a new trial.

At the beginning of voir dire at Schwichtenberg's jury trial, the trial court entered an order in limine prohibiting the parties from questioning jurors about the burden of proof in civil trials. Schwichtenberg did not object to the order, but stated that he would ask the trial court to reconsider the order in the event a juror claimed familiarity with the two burdens of proof. Toward the end of voir dire, Juror 30 testified that she worked for an insurance company and supervised civil suits by "pretty much supervis[ing] what we do (inaudible) on behalf of the company." *Id*. at 198-99. Schwichtenberg did not asked to be relieved from the order in limine and did not object to Juror 30's service as an alternate on the jury.

5

Furthermore, Schwichtenberg did not propose any preliminary or final instructions. The trial court stated the following when giving its preliminary instructions to the jury:

> Court's preliminary instruction number seven. Presumption of innocence, burden of proof. Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the defendant guilty of each essential element of the crimes charged beyond a reasonable doubt. The filing of charges is the formal method of bringing the defendant to trial. The fact that charges have been filed, the defendant arrested and brought to trial, is not to be considered by you as any evidence of guilt. The defendant is not required to present any evidence to prove his innocence or to prove or explain anything. Court's preliminary instruction number eight. Burden of proof, reasonable doubt. The burden is upon the [S]tate to prove beyond a reasonable doubt that the defendant is guilty of the crimes charged. It is a strict and heavy burden. The evidence must overcome any reasonable doubt concerning the defendant's guilt, but it does not mean that a defendant's guilt must be proved beyond all possible doubt. A reasonable doubt is a fair, actual and logical doubt based upon reason and common sense. A reasonable doubt may arise either from the evidence or from a lack of evidence. Reasonable doubt exists when you are not firmly convinced of the defendant's guilt, after you have weighed and considered all evidence. A defendant must not be convicted on suspicion or speculation. It is not enough for the State to show that the defendant is probably guilty. On the other hand, there are very few things in this world that we know with absolute certainty. The State does not have to overcome every possible doubt. The State must prove each element of the crimes by evidence that firmly convinces each of you and leaves no reasonable doubt. The proof must be so convincing that you can rely and act upon it in this matter of the highest importance. If you find there is a reasonable doubt that the defendant is guilty of the crimes, you must give the defendant the benefit of that doubt and find the defendant not guilty of the crime under consideration. . . . .

*Id*. at 213-14. During final instructions the trial court reiterated that the preliminary instructions, including those on the burden of proof, remained applicable and that the jury was free to refer to them.

We note at the outset that rulings on motions in limine are not final decisions and do not preserve errors for appeal. *Barnett v. State*, 916 N.E.2d 280 (Ind. Ct. App. 2009).

6

Motions in limine serve to protect against prejudicial evidence being placed before the jury, but the ultimate determination of the admissibility of evidence is made by the trial court in the context of a trial. *Earlywine v. State*, 847 N.E.2d 1011 (Ind. Ct. App. 2006). "Absent either a ruling admitting evidence accompanied by a timely objection or a ruling excluding evidence accompanied by a proper offer of proof, there is no basis for a claim of error." *Hollowell v. State*, 753 N.E.2d 612, 615-16 (Ind. 2001) (citing Ind. Evidence Rule 103(a)).

After Juror 30 revealed that she was a litigation specialist with an insurance company, counsel briefly approached the bench and quickly returned. The content of the exchange by counsel and the bench was not preserved in the record and defense counsel changed topics. Schwichtenberg attempts to explain the conversation that was had by way of a footnote reference to a letter submitted by trial counsel about the content of that conversation. Indiana Appellate Rule 31 provides the mechanism by which a party's attorney may prepare a verified statement of the evidence where all or part of the evidence in not available. Because this procedure was not utilized, we decline to consider this submission of extra-record facts and the issue is not preserved for our review.

In order to avoid waiver of this alleged error, Schwichtenberg argues that the restriction upon voir dire constituted fundamental error. "To qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible." *Merritt v. State*, 822 N.E.2d 642, 643 (Ind. Ct. App. 2005) (quoting *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002)). We note that the fundamental error exception to the waiver ruler is an extremely narrow one that is available only when the record reveals clearly blatant

7

violations of basic elementary principles of due process, and the harm or potential for harm cannot be denied. *Merritt v. State*, 822 N.E.2d 642 (Ind. Ct. App. 2005).

In regard to fundamental error in the context of voir dire, we note that the purpose of voir dire is to determine whether a prospective juror can render a fair and impartial verdict in accordance with the law and the evidence. *Black v. State*, 829 N.E.2d 607 (Ind. Ct. App. 2005). "A trial court has broad discretion in determining the propriety of questions posed to prospective jurors during voir dire and will be reversed on appeal only for an abuse of that discretion." *Barber v. State*, 715 N.E.2d 848, 850 (Ind. 1999). The decision of the trial court will be reversed only if there is a showing of a manifest abuse of discretion and a denial of a fair trial. *Logan v. State*, 729 N.E.2d 125 (Ind. 2000). A manifest abuse of discretion and the denial of a fair trial will usually require a showing that the defendant was in some way prejudiced by voir dire. *Id.*

Juror 30 served as an alternate juror in Schwichtenberg's jury trial and the record does not reflect that she impermissibly participated in jury deliberations. *See* Ind. Jury Rule 20(a)(8) (jurors including alternates may discuss the evidence during recesses from trial, but reserve judgment on outcome of case until deliberations). Schwichtenberg does not challenge the bias or impartiality of any of the jurors who were selected and who actually deliberated the case and likewise does not argue that any of those jurors had experience with the burden of proof in civil jury trials.

Furthermore, to the extent his argument is that the trial court's instruction on reasonable doubt did not comport with our Supreme Court's decision in *Winegeart v. State*, 665 N.E.2d 893 (Ind. 1996), we disagree. The reasonable doubt instruction, which the

8

Supreme Court authorized and recommended but did not mandate in *Winegeart*, includes language acknowledging that some jurors may have served in civil cases, but that in criminal cases the proof must be more powerful than that. *Winegeart v. State*, 665 N.E.2d 893 (Ind. 1996). Although the trial court in this case did not include language about the differences in the burden of proof in civil cases, the instruction as given did stress the higher level of proof required in a criminal case. Schwichtenberg did not object to the trial court's instruction or tender a proposed alternative instruction. He was acquitted of three of the four counts alleged against him. In sum, we find that Schwichtenberg has failed to establish how he was prejudiced by the trial court's limitation on voir dire such that it constitutes fundamental error.

2.

Schwichtenberg contends that there is insufficient evidence to support his conviction of incest as a class C felony. In particular, he claims that his conviction rests on the uncorroborated testimony of J.I., who had for years suffered from psychiatric problems, and that we should employ the incredible dubiosity doctrine to reassess J.I.'s credibility and reverse his conviction.

The standard of review for sufficiency claims is well settled; this court will neither reweigh the evidence nor judge the credibility of witnesses. *Jackson v. State*, 925 N.E.2d 369 (Ind. 2010). Rather, we will consider only the evidence favorable to the trial court's verdict and all reasonable inferences therefrom. *Alvies v. State*, 905 N.E.2d 57 (Ind. Ct. App. 2009). We will not reverse for insufficient evidence unless no rational fact-finder could have

found the defendant guilty beyond a reasonable doubt. *Clark v. State*, 728 N.E.2d 880 (Ind. Ct. App. 2000).

The doctrine of incredible dubiosity, however, allows a reviewing court to reevaluate the credibility of a witness when "a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence." *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007). "Application of the rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Id.* The rule does not apply when testimony is corroborated by additional witnesses or circumstantial evidence. *Thompson v. State*, 765 N.E.2d 1273 (Ind. 2002).

In order to convict Schwichtenberg of incest as a class C felony the State was required to prove beyond a reasonable doubt that on or about September 9, 2001 to September 21, 2001, Schwichtenberg, who was at least eighteen years old engaged in sexual intercourse with J.I., while knowing that J.I. was his biological child. I.C. §35-46-1-3 (West, Westlaw current through legislation effective May 31, 2012). The record reflects that on September 21, 2001, J.I. told police officers that Schwichtenberg, her father, had sexual intercourse with her in his bedroom and provided her with a pair of his maroon underwear to use to wipe his semen from her body after he ejaculated on her. J.I. gave the officers the location of the underwear in the Schwichtenberg's house. Officers obtained a search warrant for Schwichtenberg's house and located a pair of maroon-colored men's underwear in Schwichtenberg's bedroom. Forensic testing of the underwear revealed the presence of Schwichtenberg's semen.

Consistent with our standard of review, we find this evidence is sufficient to support Schwichetenberg's conviction. We reach this conclusion without using the incredible dubiosity doctrine because J.I.'s testimony was corroborated by other evidence. Schwichtenberg was able to challenge J.I.'s credibility at trial, including her decision to recant and then reopen the case, and to question her regarding her history of mental health issues. We decline the invitation to reweigh the evidence or reassess the credibility of witnesses.

Judgment affirmed.

MAY, J., and BARNES, J., concur.